**In re Joe L. WILLIS, Shirley Gayle Willis, Debtors.**

**Bankruptcy No. 88–03668.**

United States Bankruptcy Court, D. South Carolina.

Feb. 2, 1989.

---

### ORDER

WILLIAM THURMOND BISHOP, Bankruptcy Judge.

This matter comes before the court upon the motion of the debtors to determine the value of a mobile home pursuant to 11 U.S.C. § 506(a).[1,2]

G.E. Capital Corporation (G.E.) has a security interest in the debtors' residence, a

tor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured

1983 Heritage mobile home. The debtors argue that the appropriate valuation standard under Section 506(a) in a Chapter 13 case is the wholesale value of the mobile home. G.E. filed an objection to the debtors' valuation motion and argues that the retail value is the appropriate valuation standard under Section 506(a).

## ISSUE

In determining the allowed amount of a secured claim under Section 506(a), what value should be assigned to a mobile home which is the collateral for the claim?

## FINDINGS OF FACT

As G.E. has presented no evidence that it has the capacity to sell mobile homes at retail prices, this court must assume that G.E. would dispose of this property by selling it to a mobile home dealer. In any event, G.E. would incur substantial expenses in the course of selling the mobile home to another purchaser. The multiwide mobile home would have to be broken up into movable sections and removed from the debtors' property. The mobile home would then have to be set up on a lot prior to a sale. Part of the sales price would include the costs incurred in the redelivery, reset up of the mobile home, and also the retailer profit.

The NADA Mobile Home Manufacturer Housing Appraisal Guide contains retail figures for mobile homes and explains the procedure to be utilized in determining various wholesale values of a mobile home. In this case, the average retail value of the mobile home was Twenty Thousand Nine Hundred and Seventy Three dollars ($20,973.00). The "state value adjustment guidelines" states that mobile homes in South Carolina are worth ninety-one percent of the average retail figure. In this situation, therefore, the average retail value of the mobile home is Nineteen Thousand Nine Hundred and Ninety–Five dollars and $^{43}/_{100}$ ($19,995.43).

The "Wholesale Value Guidelines" section of the NADA Guide states that the

> "wholesale value is the amount the retailer would reasonably pay for a used home. This value depends on the circumstances under which the home is offered for sale. This chart shows how various circumstances affect the wholesale value."

The wholesale values are determined by multiplying the retail figure by a fixed percentage based upon the width of the particular mobile home. In determining the "moved for resale" wholesale value, the Wholesale Value Guidelines Section of the NADA Guide states that the average retail book or appraised value should be reduced to reflect costs for "tear down, transport, lot set up, redelivery, reset up and a retailer profit, where a home is purchased by a retailer and is offered for sale on a sales location." The moved for resale multiplier is .65 of the average retail value, so the moved for resale wholesale value of the mobile home in question is Twelve Thousand Nine Hundred and Ninety–Seven and $^{08}/_{100}$ dollars ($12,997.03).

## DISCUSSION AND CONCLUSION

The legislative history of § 506(a) states that:

> While courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property. This determination shall be made in conjunction with any hearing on such disposition or use of property or on a plan affecting the creditor's interest. To illustrate, a valuation early in the case in a proceeding under sections 361–363 would not be

---

claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in con-

junction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

**2.** Further references to the Bankruptcy Code shall be by section number only.

binding upon the debtor or creditor at the time of confirmation of the plan.

S.Rep. No. 95–989, 95th Cong., 2nd Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5854.

In this district, the test used to fix the value of collateral for the purposes of determining the allowed amount of a secured claim is the amount that would be realized if the lien was foreclosed, and the collateral was disposed of in a commercially reasonable manner. *In re Boyer*, 82–00873 (Bankr.D.S.C. 6/10/85).

This court applied this test in *Johnson v. General Motors Acceptance Corp.*, 115 B.R. 515 (Bankr.D.S.C. 1988) wherein a Chapter 13 debtor sought to value a claim secured by an automobile. The debtor in *Johnson* argued that because the creditor was not an automobile dealer, to dispose of the collateral in a commercially reasonable manner, the creditor would have to sell the collateral at a wholesale price to a dealer, therefore, the appropriate standard was the wholesale value. The court agreed and valued the collateral at the wholesale value.

Similarly, this court in *In re Boyd*, 115 B.R. 516 (Bankr.D.S.C. 1988), ruled that where the creditor was not in the business of selling mobile homes at retail prices, a value approximating the moved for resale wholesale value would be what the creditor would receive if the property was disposed of in a commercially reasonable manner and was, therefore, the appropriate standard for determining the value of the collateral in the context of a Chapter 13 confirmation of plan hearing.

Other courts have also adapted this test as being the standard most consistent with the flexible approach mandated by the language of § 506(a) and the legislative history. *In re T.H.B. Corp.*, 85 B.R. 192, 19 C.B.C.2d 419 (Bankr.D.Ma.1988); *In re Parr*, 30 B.R. 276, 277 (Bankr.N.D.Ala. 1983); *In re Q.P.L. Components*, 20 B.R. 342 (Bankr.E.D.N.Y.1982); *In re Klein*, 7 B.C.D. 668, 10 B.R. 657, 4 C.B.C.2d 412 (Bankr.E.D.N.Y.1981); *In re Jones*, 6 B.C.D. 965, 5 B.R. 736 (Bankr.E.D.Va. 1980).

As the secured creditor, G.E. is not in the business of selling mobile homes at retail prices, therefore the moved for resale wholesale value of the collateral is the amount which G.E. would receive if the mobile home was disposed of in a commercially reasonable manner.

### ORDER

IT IS ORDERED, ADJUDGED, AND DECREED that the value of the mobile home is Twelve Thousand Nine Hundred Ninety–Seven and $^{03}/_{100}$ dollars ($12,997.03). Therefore, G.E. Capital Corporation has an allowed secured claim in the amount of $12,997.03, and the balance of the claim is deemed to be unsecured.