**In re Anthony J. PHILLIPS, a/k/a, Tony Phillips and Robyn Phillips, Debtors.**

**FORD MOTOR CREDIT COMPANY, Movant,**

**v.**

**Anthony J. PHILLIPS and Robyn Phillips, Respondents.**

**Bankruptcy No. 92–10189.
CM No. 92–501.**

˙ United States Bankruptcy Court,
D. New Hampshire.

June 19, 1992.

John J. Albright, Newmarket, N.H., for debtors.

Jeffrey A. Schreiber, Danvers, Mass., for Ford Motor Credit Co.

Lawrence P. Sumski, Amherst, N.H., Chapter 13 Trustee.

### MEMORANDUM OPINION AND ORDER

JAMES E. YACOS, Bankruptcy Judge.

The chapter 13 petitioners' plan of reorganization came on for hearing before the Court on May 15, 1992, on a motion to reduce the value of Ford Motor Credit Company's ("Ford") security interest in

two Suzuki automobiles. Also, before the Court for decision is whether a chapter 13 plan may bifurcate a secured creditor's interest in personal property into secured and unsecured claims and "cram" that bifurcation down over the objection of the secured creditor. Also pending are the related issues of the time and method of valuation.

The debtors have elected to retain both of their Suzuki automobiles as an inexpensive and reliable mode of transportation to and from work. The plan calls for the payment of $168 per month for 36 months resulting in the complete payment of the present "blue book" value of both vehicles. The plan provides that Ford will receive 100 percent of the secured value and 10.1 percent of the unsecured value of the two vehicles for a total of $7,063 over three years. The debtors argue that only if the Court reduces the "payoff" on the two vehicles to their actual value will it be possible for them to perform their chapter 13 plan. If they cannot perform their chapter 13 plan, they argue they will be left with no resort but to convert to a case under chapter 7 and abandon the two automobiles rather than reaffirm the debts.

The matter is further complicated in that the debtors had originally leased a Ford Ranger and under the terms of that lease were permitted to accumulate 60,000 miles during a four-year lease period. However, somewhere between two and two-and-a-half years into the four year lease term, the debtors had already exceeded the 60,000 mile allowance. They faced an approximate $4,000 excess mileage penalty at the time of the lease termination. In order to avoid this penalty, the debtors arranged to terminate the lease early and purchase the two Suzuki automobiles from the leasing agent who had leased them the Ford Ranger. According to the debtors, the balance of the Ford Ranger lease was incorporated into the two Suzuki loans. Thus the debtors argue that they were financing the deficit of the truck Ford Ranger lease through the secured loans on the two Suzuki automobiles and this accounts for why the combined loan amount outstanding on the two Suzuki automobiles is between two and two-and-a-half times their actual current value.

Lastly, the debtors argue that if they have to surrender the vehicles they will have a difficult time realizing the Code's "fresh start" policy because they will not be able to get back and forth from work.

## DISCUSSION

■ That a chapter 13 debtor may bifurcate a secured party's claim into a secured claim representing the actual present value of the collateral securing the claim and an unsecured claim to be treated along with the general group of unsecured creditors is specifically provided for by 11 U.S.C. § 1322(b)(2). It provides in relevant part:

> (b) Subject to subsections (a) and (c) of this section, the plan may— ...
>
> > (2) modify the rights of holders of secured claims, other than in a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

See *In re Chapman*, 135 B.R. 11 (Bankr. M.D.Pa.1990).

The Court had originally requested the parties to brief the applicability of § 506(a) of the Code to chapter 13 reorganizations, but today rules that § 1322(b)(2) in and of itself provides for a chapter 13 plan's modification of the rights of holders of secured claims in personal property into secured and unsecured claims.

Having ruled as a matter of law that chapter 13 plans may modify the rights of secured claims, bifurcating them into secured and unsecured claims, it becomes necessary to two related issues: 1) the date of valuation of the collateral for purposes of bifurcation; and 2) the method of valuation.

■ With respect to the date of valuation, the Court rules that that date will be the date of the filing of the chapter 13 petition. *In re Van Nort*, 9 B.R. 218 (Bankr.E.D.Mich.1981); *contra In re*

*Chapman,* 135 B.R. 11 (Bankr. M.D.Penn.1990). The Court so rules because of the foreseeable delay in formulating a plan and then getting that plan confirmed. This foreseeable delay is more within the control of the debtor than the secured party and therefore the secured party should not be forced to bear the risk of delay the law may require in getting the matter to hearing and determination.

█ Finally, the Court must determine which method valuation should be used to arrive at the present value of the collateral for purposes of bifurcation into secured and unsecured claims. The parties in this case have taken somewhat contrary positions with the chapter 13 plan proponents arguing that the wholesale value, also known as the blue book value, should be used to determine the present value of the collateral and Ford, arguing that the average between the wholesale and retail value as found in the official used car guide should be used to value the collateral.

While other courts have adopted Ford's proposed method of valuation, this Court rules the wholesale value of the vehicle in question as of the filing date determines the present value of the collateral. *Van Nort,* 9 B.R. at 221–22. In determining that the wholesale value should be used, the Court takes cognizance of the reality that a secured creditor would most likely dispose of the car through an auction which would more reflect the wholesale value than retail value.

It is therefore

ORDERED, ADJUDGED and DE-CREED as follows:

1. A chapter 13 plan may bifurcate the claims of secured creditors with interests in a debtor's personal property into secured and unsecured claims pursuant to 11 U.S.C. § 1322(b)(2).

2. The date of valuation for purposes of bifurcation is the date of the filing of the petition.

3. The proper value to be used for bifurcation purposes is the wholesale value of the vehicle in question as of the filing date.

4. In this case I will find that the wholesale value of the five door Suzuki was $3,250 on the filing date in January of 1992 and the wholesale value of the two door Suzuki as of the same date was $3,750.

The claims therefore will be bifurcated on that basis in the debtor's plan with the balance over the debt owing to be treated as a general unsecured claim.

DONE and ORDERED.