**In re Thomas O. COATES and Nina Coates, Debtors.**

**Bankruptcy No. 94–75158.**

United States Bankruptcy Court,
D. South Carolina.

March 9, 1995.

Rolf M. Baghdady, Columbia, SC, for Thomas O. Coates and Nina Coates.

Tara E. Nauful, Columbia, SC, for Chrysler Credit Corp.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER is before the Court upon the Motion of the Debtors, Thomas O. Coates and Nina Coates ("Coates"), to value a 1994 Dodge Caravan, VIN 284GH2539RR789352, ("Vehicle"), under lien to Chrysler Credit Corporation ("Chrysler Credit") pursuant to 11 U.S.C. § 506 [1] and the Motion of Chrysler Credit seeking relief from the automatic stay of § 362(d) in reference to its security interest in the same Vehicle.

After consideration of the pleadings before the Court, arguments of counsel, and the testimony of Coates, this Court makes the following Findings of Fact and Conclusions of Law:

### *FINDINGS OF FACT*

1. Thomas O. Coates and Nina Coates ("Debtors") filed a petition under Chapter 13 of the Bankruptcy Code on October 21, 1994.

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157 and 11 U.S.C. §§ 362 and 506. This is a core proceeding.

3. Wm. Keenan Stephenson, Jr., the trustee of the Debtors' estate, ("Trustee"), did not file an objection to the relief sought by Chrysler Credit or Coates.

4. Chrysler Credit has filed a claim against the Debtors in the amount of $20,-919.16. As collateral for its claim, Chrysler Credit asserts a purchase money lien on the Vehicle.

---

1. Further reference to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.,* shall be by section number only.

5. The parties have stipulated that there is no equity in the Vehicle above the lien of Chrysler Credit.

6. The Vehicle was purchased on June 6, 1994 for approximately $20,000.00. At the time of purchase, the Vehicle had three (3) miles on it.

7. As of the date of the hearing, January 9, 1995, the Vehicle had approximately 34,000 miles.

8. Coates testified that as of the hearing date, the Vehicle was worth approximately $13,250.00.

9. At the time of the valuation hearing, the damage to the Vehicle included one scratch on the Vehicle, the front end being out of alignment and a broken fuel gauge.

10. The Debtors' Chapter 13 Plan proposes to retain the Vehicle, and to make monthly payments to Chrysler Credit in the amount of $425.00 per month until the value of the security plus eight and one-half percent (8.5%) interest has been paid in full. The Plan presently provides for unsecured creditors to be paid 17% of their allowed claims.

11. The parties have stipulated that the National Automobile Dealers Association Official Used Car Guide, ("N.A.D.A. guide") is the appropriate source for determining the relative value of the Vehicle in this case.

### CONCLUSIONS OF LAW
### I. VALUATION

The Debtors have asked this Court to place a value on the Vehicle pursuant to § 506 for purposes of determining what portion of Chrysler Credit's claim that will be treated as a secured claim and what portion will be treated as an unsecured claim in the Chapter 13 Plan. "Section 506(a) requires a bifurcation of a 'partially secured' or 'undersecured' claim into separate and independent secured claim and unsecured claim com-

ponents" based upon the court's valuation of the collateral and the creditor's claim. 3 *Collier on Bankruptcy* ¶ 506[4] at p. 506–15 (15th ed. 1989).[2]

The legislative history of § 506(a) indicates that no fixed approach to valuation is correct. "Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case. H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6312. The Senate Report further states that "[w]hile courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property." S.Rep. No. 989, 95th Cong., 1st Sess. 68, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5854.

The valuation process is not an exact science, and the court must allocate varying degrees of weight depending upon the court's opinion of the credibility of that evidence. *In re White*, 93–75430, slip op. at 6 (Bankr.D.S.C. 8/30/94) (JBD). In their motions in this proceeding, the parties did not specify the purpose of the valuation, but this Court finds the value determined shall serve for purposes of adequate protection considerations under the § 362 motion as well as for treatment of the creditor's claim under the Chapter 13 Plan. A recent decision from the Fourth Circuit reiterated the intent of § 506.

> Property valuations in bankruptcy are "determined in light of the purpose of the valuation and of the proposed disposition or use of such property." *[Matter of] Vit-*

---

2. Section 506(a) states:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest in the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

*reous Steel [Products Co.],* 911 F.2d [1223] at 1232 [ (7th Cir.1990) ]. We have noted that "estimates of value made during bankruptcy proceedings are 'binding only for the purposes of the specific hearing and ... [d]o not have a *res judicata* effect' in subsequent hearings." *In re Snowshoe, Inc.,* 789 F.2d 1085, 1088–89 (4th Cir.1986). (citations omitted). Accordingly, valuation is a question of fact, and can be overturned on appeal only if clearly erroneous. *In re Midway Partners,* 995 F.2d 490, 493 (4th Cir.1993).

*Estate Const. Co. v. Miller & Smith Holding Co., Inc.,* 14 F.3d 213 (4th Cir.1994).

In the within proceeding, the Debtors have filed for relief under Chapter 13 of the Bankruptcy Code and have evidenced their intent to retain the Vehicle through their Plan. The parties have stipulated that the N.A.D.A. guide is the appropriate source for determining the relative value of the Vehicle; however, they dispute which is the most appropriate time for the determination of value to be made and whether a wholesale or retail valuation should be used.

Chrysler Credit asserts that the retail value of the collateral on the date of the petition should control, while the Debtors assert that the wholesale value of the collateral on the date of the confirmation of the plan is the proper measure.

### RETAIL v. WHOLESALE

■ Chrysler Credit argues that when a debtor's intention is to retain a vehicle, value should be determined based on the replacement value of the vehicle, in other words, what it would cost the Debtors' today to purchase the same vehicle. In contrast, Coates argues that Chrysler Credit is only entitled to the N.A.D.A. wholesale value of the Vehicle because that value would most closely represent the extent of the creditor's interest in the Vehicle.

Section 506(a) states in part that for purposes of valuation proceedings, "[s]uch value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

The seminal bankruptcy case in South Carolina with regard to valuation of property for determining the allowed amount of a creditor's secured claim is *In re Boyer,* 82–00873 (Bankr.D.S.C. 6/10/85) interlocutory appeal dismissed without prejudice, C.A. No. 2:85–2108–2. (D.S.C.1985). Beginning in 1985 with the *Boyer* opinion, this Court began to hold "that the debtors' property, both personal and real, should be valued at an amount which could be derived from its disposition in a commercially reasonable manner." *Boyer,* slip op. at 8. The District Court for the District of South Carolina has interpreted this "commercially reasonable manner" standard to mean that in valuation proceedings in Chapter 13 reorganizations, "the secured claims should be fixed at wholesale value because the creditors are not in the business of selling at retail and have not shown the capacity to do so." *Grubbs v. National Bank of South Carolina,* 114 B.R. 450 (D.S.C.1990).

*Grubbs* dealt with an appeal of orders of the bankruptcy court setting the allowed amounts of the creditors' secured claims at the retail values of the collateral. The bankruptcy court had held that the creditors had recourse agreements with dealers which in essence sell the property at retail value, thus, making retail value the value which would be obtained if the property were disposed of in a commercially reasonable manner.

In *Grubbs,* the District Court identified the *Boyer* commercially reasonable disposition rule as the general rule in South Carolina. *Grubbs,* at 451. The District Court in *Grubbs* also stated the general rule in South Carolina that collateral of this type should be valued at wholesale rather than retail citing *In re Boyd,* 115 B.R. 516 (Bankr.D.S.C.1988); *Johnson v. General Motors Acceptance Corp.,* 115 B.R. 515 (Bankr.D.S.C.1988) and *In re Willis,* 115 B.R. 518 (Bankr.D.S.C. 1989). In reversing the Bankruptcy court, however, the District court went on to state:

> Consistent with the purpose of Chapter 13 valuation, the court below should have entirely disregarded the recourse agreements between the creditors and the third party dealers, as the overwhelming majority of other courts have done. Ignoring

those agreements, and applying the usual valuation rule, the secured claims should be fixed at wholesale value because the creditors are not in the business of selling at retail and have not shown the capacity to do so. In this regard, the court notes that the creditors cannot reasonably be said to "stand in the shoes" of the dealer-assignors, so as to justify retail valuation, because the creditors do not incur any of the resale expenses regularly borne by dealers, such as the costs of doing retail business and of preparing the particular collateral for resale, which costs reduce the net value of repossessed collateral to a retail dealer substantially below retail price.

*Grubbs*, at 452.

After *Grubbs*, the Bankruptcy Court in South Carolina continued to apply the *Boyer* standard of setting the allowed amounts of creditors' secured claims at the amount which would be received by the creditor if the property were disposed of in a commercially reasonable manner. In light of *Grubbs*, however, when this Court found that retail or fair market value was the most commercially reasonable value, that value was further reduced by the costs of sale and any other expenses of selling the property at a retail price.[3]

The next case of importance in establishing the standard to be used in this Court in the valuation of debtors' property is *Brown and Company Securities Corp. v. Balbus (In re Balbus)*, 933 F.2d 246 (4th Cir.1991). In *Balbus*, the Court of Appeals was called on to determine the amounts of the secured and unsecured portions of an undersecured creditor's claim for purposes of evaluating whether the debtor's unsecured debts exceeded the jurisdictional debt limits for Chapter 13 as found in § 109(e). In calculating the amount of the creditor's secured and unsecured claims, both the Bankruptcy Court and the District Court refused to deduct the hypothetical costs which would be incurred if the creditor's collateral were sold, from the fair market value of the collateral. In citing the 1986 *Courtright* decision from the Bankrupt-

cy Court for the District of Oregon; the *Balbus* opinion stated:

> If the [first sentence of § 506(a)] were interpreted to mean that the value must be fixed at the amount which the creditor would receive on foreclosure, then the last sentence of the statute which provides that the value shall be determined in the light of the purpose of the valuation and of the proposed disposition or use of the property, would be surplusage. Such an interpretation would mean that the value should always be fixed at the amount which the creditor would receive upon foreclosure regardless of the purpose of the valuation and of the proposed disposition or use of the property. The test would not depend upon whether the debtor intended to release the property or intended, instead to retain and use the property. It is not appropriate for the court to ignore or give no effect to the language of the last sentence of the statute. *In re Courtright*, 57 B.R. 495, 497 (Bankr.D.Or.1986).

*Balbus*, at 250.

In the *Balbus* opinion, the Court clearly held that when the debtor's proposed use or disposition of the property is the retention of the property, the deduction of hypothetical costs would be "reading the second sentence of § 506(a) out of the statute" and that "[t]he second sentence in § 506(a) requires that we determine the value 'in light of the purpose of the valuation and of the proposed disposition or use of such property.' " *Balbus*, at 251. In affirming the orders of the Bankruptcy Court and the District Court, the Court of Appeals stated as follows:

> The second sentence of 11 U.S.C. § 506(a) requires that we determine the value of a creditor's interest "in light of the purpose of the valuation and of the proposed disposition or use of such property." We find that we cannot ignore the direction of that sentence and thus cannot follow those courts which have chosen to focus on the first sentence of § 506(a). In this case, the purpose of valuation, to determine whether the dollar limits of 11 U.S.C. § 109(e) have been exceeded, counsels that hypothetical costs should not be deducted.

---

3. *In re Hinson*, 90–00841 (Bankr.D.S.C. 5/18/90) (WTB).

Balbus intends to continue living in his house, so the proposed disposition of the property also counsels that hypothetical costs should not be deducted. Finally, the dicta in *Timbers* indicates that the proper interpretation of valuation in § 506(a) is the value of the collateral, not the value of the collateral minus the hypothetical costs of sale. *See [United Savings Association of Texas v.] Timbers*, 484 U.S. [365,] at 372, 108 S.Ct. [626,] at 630[, 98 L.Ed.2d 740 (1988) ].

*Balbus*, at 252.

The *Balbus* decision was based in part on several lower court decisions from various circuits including the *Matter of Crockett* decision from the Northern District of Illinois. *Matter of Crockett*, 3 B.R. 365 (Bankr. N.D.Ill.1980). In citing the *Crockett* opinion, the Court in *Balbus* stated:

> Under a Chapter 13 plan the secured claim should be valued with due regard to the value of the property of the estate. "[T]he proposed disposition or use of such property" (sec. 506(a)) in the instant case is for the debtors' retention and use. Therefore, the debtors cannot eat with the hounds and run with the hares. *Seeking retention of the property, they cannot insist on liquidation values to be paid to the creditor in installments.* (emphasis added).

*Balbus*, at 252.

The Fourth Circuit revisited the issue in the 1992 decision of *Coker v. Sovran Equity Mortgage Corp.*, 973 F.2d 258 (4th Cir.1992). In *Coker*, the Court of Appeals relying on *Balbus* held that for purposes of determining the extent of a junior lienholder's security interest in property which Chapter 13 debtors planned to retain, the disposition costs of a hypothetical sale should not be deducted from the fair market value of the property. The Court held:

> Other courts, including this one, have focused on the factors in the second sentence [of 506(a) ], 'the purpose of the valuation and ... the proposed disposition or use of [the] property.' E.g., *In re Usry*, 106 B.R. 759 (Bankr.M.D.Ga.1989); *In re 222 Liberty*, 105 B.R. 798, 804 (Bankr.E.D.Pa.1989). These courts rely on the maxim that all

provisions in a statute must be given effect.

*Coker*, at 260.

This Court in applying the Fourth Circuit's opinions has held that when the debtor will retain the property and when the creditor is not in the business of selling vehicles, "the fair market value is the value which could be derived from the most commercially reasonable disposition of the property (without deducting any hypothetical costs of sale) so long as there is credible evidence to show that the fair market value propounded is not too speculative". *In re Dorrah*, 92–76816 (Bankr.D.S.C. 4/16/93) (WTB). In the *Dorrah* decision, this Court in relying on *EEE Commercial Corp. v. Holmes (In re ASI Reactivation, Inc.)*, 934 F.2d 1315, 1322 (4th Cir.1991) stated:

> In light of *Boyer, Balbus,* and *Coker,* the amount of a creditor's secured claim in property in which the estate has an interest should be set at the *lesser* of the amount of the creditor's claim (including any allowable interest, fees, costs, or charges under 11 U.S.C. § 506(b)) [citation omitted] *and* the amount which would be received if that creditor's collateral were disposed of in the *most* commercially reasonable manner in light of the purpose of the valuation and the proposed use of the property.

*Dorrah*, slip op. at 7.

It is in the context of these decisions that this Court must address whether wholesale value or retail value represents the amount which would be received if the creditor's collateral were disposed of in the most commercially reasonable manner to determine the value of the Vehicle *in light of the decision of the Debtor to retain the property.*

As relied upon by Chrysler Credit, the Fifth Circuit Court of Appeals has recently adopted a "replacement" approach for purposes of valuation motions of automobiles in Chapter 13 cases and has held that the proper measure of a replacement cost is the retail, not wholesale, value of the vehicle. *In re Rash*, 31 F.3d 325 (5th Cir.1994). In reaching this decision, the Fifth Circuit recognized that this approach would be consistent with the Supreme Court's guidelines

enumerated in *Timbers* and would logically flow from this Circuit's *Coker* and *Balbus* decisions. The Fifth Circuit stated that:

Under this "replacement model", the "value of the lien should be based on the retail value of the collateral since such is the replacement value to the debtor; and the costs associated with sale of the collateral should not be deducted since no sale is contemplated." *[In re] Green,* 151 B.R. [501,] 504 [ (Bankr.D.Minn.1993) ]. See *In re Coker,* 973 F.2d 258, 260 (4th Cir.1992); *Brown & Co. Sec. Corp. v. Balbus (In re Balbus),* 933 F.2d 246, 251–52 (4th Cir. 1991). Proponents of the "replacement cost" approach argue that it is the only one that gives effect to the entire language of § 506(a), whereas the foreclosure approach ignores the second sentence of the statute.

*Rash,* at 329.

In making the determination that the going concern or replacement value of the property is the proper measure, the Court stated that:

If the debtor retains the property as part of a reorganization, the proper measurement of the estate's interest in the property is the "going-concern" value of the collateral to the debtor's reorganization. The value to the debtor of retaining and using the property can best be measured by what he would have to pay to purchase another truck. (citation omitted). Under § 506(a), the court must value the collateral in light of its purpose and proposed use in the reorganization. *Going concern, or replacement, value accounts for the debtor's proposed use of the property, whereas foreclosure value does not.* (emphasis added).

*Rash,* at 329.

In adopting this conclusion, the Fifth Circuit also noted one of the inherent problems with setting a valuation at the wholesale price:

Reducing the security interest to its wholesale value would allow parties to use bankruptcy to alter their substantive rights as defined outside bankruptcy. Indeed, a debtor could use bankruptcy to knock-down the secured creditor's interest to wholesale value, then turn around and re-sell the collateral at retail blue-book value and pocket the difference.

*Rash,* at 330.

Judge Dreher of the Bankruptcy Court for the District of Minnesota in addressing the issue of the proper method of valuing an undersecured creditor's allowed secured claim stated "[t]here are a multitude of published cases on this issue. The only thing more staggering than the sheer number of the decisions is the variance among them." *In re Green,* 151 B.R. 501 (Bankr.D.Minn. 1993). In the *Green* decision, the Court found that the property valuation should be retail rather than wholesale. The Court, in disagreeing with the South Carolina District Court's previous ruling in *Grubbs, supra,* noted that "[t]o value the creditor's interest based on the wholesale value that the creditor would receive upon disposition of the vehicle, or to deduct the costs of such sale, effectively writes out the second sentence of section 506(a)." *Green,* at 506. Judge Dreher noted that the reasoning in the *Grubbs* type decisions generally resulted in two conclusions.

First, the appropriate value of the lien interest should be based on the wholesale value of the collateral rather than its retail value, since the creditor is generally not considered a "dealer" in the collateral and therefore could not sell it at retail; and second, costs of sale should be deducted from the value of the collateral to arrive at the value of the lien interest, since such costs would have to be incurred by the creditor in taking possession of and selling the collateral.

*Green,* at 504.

Based upon this Circuit's reasoning in the *Balbus* and *Coker* opinions finding that hypothetical costs of sale should not be deducted from the fair market value of the collateral when the debtor seeks to retain possession, it would appear to be inconsistent to find that the value of the collateral must be set at wholesale; that is, the amount or value immediately realizable to a creditor not in the business of retailing the collateral. It appears that the Fourth Circuit in *Balbus* and *Coker* has directed this Court to a standard

for valuation based upon the perspective of the proposed *use* of collateral by the debtors and not upon the perspective of the creditor in recovering the collateral. This reasoning seems to promote, if not establish, the standard of retail or replacement value as expressed in *Rash.*

It is therefore the finding of this Court that in Chapter 13 reorganizations, for purposes of valuation of the collateral when a debtor is attempting to retain property subject to a security interest held by a creditor, the most commercially reasonable manner of valuation is the retail value.

In this proceeding, Coates testified that he estimated the value of the Vehicle at $13,250.00. Generally, "a property owner, who is familiar with his property and its value, may give his estimate as to its value ..., even though he is not otherwise an expert." *In re White*, 93–75430, slip op. at 6 (Bankr.D.S.C. 8/30/94) (JBD) citing *Whisenant v. James Island Corporation*, 277 S.C. 10, 13, 281 S.E.2d 794, 796 (1981). However, reviewing the value as set forth in the N.A.D.A. guide and the stipulation by the parties that the N.A.D.A. guide is the appropriate indicator of the value, it is the finding of this court that for the purposes of the motions before the Court, the more credible value of the Vehicle is the retail value set for by the applicable month in accordance with the National Automobile Dealers Association Official Used Car Guide.

## DATE OF DETERMINATION OF VALUE

There are at least three possible dates that this Court could use to value the Vehicle; the date of the filing of the Chapter 13 Petition, the date of the valuation hearing or the date of the confirmation of the Plan. Vehicles, particularly newer vehicles, are typically subject to rapid depreciation and therefore the date of the determination of value can be critical. The Debtors have taken the position that the proper date should be the date of the confirmation hearing. Chrysler Credit, on the other hand, argues that the proper date should be the date of the filing of the Chapter 13 petition.

The argument that the proper date of the valuation should be the date of confirmation appears very sensible. Section 1325 allows confirmation of a plan if secured claims are paid to the extent of their value "as of the effective date of the plan." Several jurisdictions have followed this approach because it is at this date when the court resolves "what payments the Debtor must make to each interested party under a plan." *In re Blakey*, 76 B.R. 465 (Bkrtcy.E.D.Pa.1987) and *In re Crompton*, 68 B.R. 831 (Bkrtcy.E.D.Pa. 1987). The Bankruptcy Court for the District of Utah stated that in a Chapter 13 case involving the valuation of a car:

> The effective date of the plan is defined by the plan to be the date of confirmation ... [I]n the ordinary Chapter 13 case involving the valuation of a car, the date of the confirmation hearing will be the proper date for fixing the car's valuation.

*In re Cook*, 38 B.R. 870 (Bkrtcy.D.Utah 1984).

In this case, the date of confirmation is a future and uncertain event. While it may occur quickly after a valuation hearing in some cases, it may not always occur quickly after a § 362 or other adequate protection request which by its nature necessitates a valuation of the property. While values pursuant to § 506(a) may be different for considerations of § 362 motions as opposed to confirmation hearings, in this instance under this District's usual Chapter 13 case procedures, the routine establishment of more than one value appears to be unnecessarily duplicative. Therefore, this Court rejects setting valuation as of the confirmation date in this case.

Other courts including the Bankruptcy Court for the District of New Hampshire have held that the proper date for valuation purposes in a Chapter 13 proceeding is the date of the filing of the Petition. *Ford Motor Credit Co. v. Phillips (In re Phillips)*, 142 B.R. 15 (Bankr.D.N.H.1992). In *Phillips*, Judge Yacos stated his reasoning behind the ruling.

> The Court so rules because of the foreseeable delay in formulating a plan and then getting that plan confirmed. This foreseeable delay is more within the control of the

debtor than the secured party and therefore the secured party should not be forced to bear the risk of delay the law may require in getting the matter to hearing and determination.

*Phillips,* at 17.

One commentator, Judge Lundin of the United States Bankruptcy Court for the Middle District of Tennessee, has noted the benefits of valuing collateral as of the petition date.

There is some logic to this position because the amount of the creditor's claim is fixed at the date of the petition by 11 U.S.C. § 502; thus it seems only fair that the value of collateral securing that claim should also be fixed on that date. Choosing the date of the petition protects the secured claim holder from depreciation in its collateral between the filing and confirmation . . . It might also be pointed out that exemptions are typically determined as of the date of the petition and exemptions are relevant to the value of a creditor's interest in estate property for purposes of determining the allowed amount of secured claims under § 506(a). It would be odd to determine the value of collateral for purposes of satisfaction of an allowed secured claim at confirmation under § 1325(a)(5)(B) as of a date that is different than the date for determining exemptions.

*2 Chapter 13 Bankruptcy* § 5.47 (2nd ed. 1994).

The difficulty with this reasoning would seem to be that by setting the value of the collateral as of the petition date, the secured creditor would be protected from all postpetition depreciation of its collateral automatically, without any action by the creditor. If a secured creditor is concerned about the adequate protection of its security interest from depreciation, that creditor must *seek* that

protection pursuant to § 362[4] or § 363[5]. By setting the valuation of the collateral at the petition date, the Court would be in effect, automatically adequately protecting the secured creditors interest in that collateral, not upon the creditor's request for adequate protection but upon a determination of value at any time in the case. This interpretation would effectively allow a creditor's interest to become adequately protected without making the required finding of fact on the issue of adequate protection and without the creditor's asking for such protection. *In re Snowshoe Co., Inc.,* 789 F.2d 1085 (4th Cir.1986). This Court therefore rejects the petition date as the date for determining the value of the Vehicle in this case.

This Court has previously taken the position that in such matters, the date of the valuation hearing was the operative date to determine the proper value of the property. This Court stated its reasoning for the position as follows:

Here valuation as of the date of the valuation hearing is appropriate because "value is not to be determined as of the date of filing but on the date proceedings calling for the value of specific collateral are initiated. This provides the court with the flexibility implicit in the statute [§ 506]. It also contemplates a valuation at or near the time of litigation with regard to the property, thus providing the court with a more complete factual basis to resolve the dispute." [citations omitted].

*In re Boyer,* 82–00783 (Bankr.D.S.C. 6/10/85), interlocutory appeal dismissed C.A. No. 2:85–2108–2 (D.S.C.).

In *Boyer,* this Court put great emphasis on the fact that the date of the valuation hearing would include the most factually complete and current appraisals for valuation purposes. For this reason, setting the valuation

---

**4.** Section 362(d)(1) provides that:

*On request of a party in interest* and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
 (1) for cause, including the lack of adequate protection of an interest in property of such party in interest. (emphasis added).

**5.** Section 363(e) states in part that:

Notwithstanding any other provision of this section, at any time, *on request of an entity that has an interest in property* used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. (emphasis added).

on the date of the hearing would seem to be the most commercially reasonable date for valuation purposes and this Court finds that the collateral securing Chrysler Credit Corporation's claim should be valued as of the date of the hearing, January 9, 1995.

## II. RELIEF FROM THE AUTOMATIC STAY

■ In addition to the Motion for Valuation, Chrysler Credit has also filed a motion requesting modification of the stay pursuant to § 362(d)(1) and (d)(2) to allow it to repossess the Vehicle due to the Debtors inability to provide Chrysler Credit with adequate protection of its security interest. The Bankruptcy Code provides that, in any hearing under § 362(d), the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and the party opposing such relief has the burden of proof on all other issues. 11 U.S.C. § 362(g). The party seeking relief from the stay for cause due to lack of adequate protection also has the burden of proving a prima facie case of cause due to the lack of adequate protection. *In re Fowler,* 92–72920, slip op. at 9 (Bankr.D.S.C. 5/12/93) (WTB). The Fourth Circuit has recently summarized the standard for relief under § 362(d)(2) by stating that,

> A creditor seeking relief from the automatic stay provisions in § 362 may obtain an order from the bankruptcy court allowing it to proceed against property if '(A) the debtor does not have any equity in such property; and (B) such property is not necessary to an effective reorganization.' 11 U.S.C. § 362(d)(2). The Supreme court has construed the second requirement as 'a reasonable possibility of successful reorganization within a reasonable time.' *United Savs. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 376 [108 S.Ct. 626, 633, 98 L.Ed.2d 740] (1988).

*In re Ursula Patestas,* 46 F.3d 1126, 1126 (4th Cir.1995) (Unpublished).[6]

6. Unpublished opinions are not binding precedent in this circuit but may be persuasive. See

## ADEQUATE PROTECTION

■ Inasmuch as the parties have agreed that there is no equity in the Vehicle, the burden of proof under § 362(g) is on Coates to show that Chrysler Credit's interest in the Vehicle is adequately protected and that the property is necessary for an effective reorganization of the Debtors.

■ Chrysler Credit's primary adequate protection argument is that the Vehicle has depreciated to such a great extent between the time of the purchase of the Vehicle and the filing of the Chapter 13 petition, that the Debtors are unable to provide adequate protection of Chrysler Credit's interest in the Vehicle. Coates take the position that Chrysler Credit is not entitled to relief from the stay solely based upon the depreciation of the Vehicle.

In 1984, the Fourth Circuit reiterated the proposition that rapid depreciation of an automobile used as collateral could not support a creditor's claim of inadequate protection. *In re Perry,* 729 F.2d 982, 10 C.B.C.2d 701 (4th Cir.1984).

> [The creditor's] position is no more fragile … than that of any lender under an installment sales contract. We can muster even less sympathy for institutional lenders; they are fully cognizant of the risks inherent in the making of loans, default among them, and receive substantial interest payments to help offset those risks.

*Id.* at 985, 10 C.B.C.2d at 704.

■ Chrysler Credit makes the argument that in the non-bankruptcy arena, secured lenders are able to protect themselves against rapid depreciation by charging higher interest rates; however, once a debtor files for Chapter 13 reorganization, this protection is lost. However, this risk is inherent in every installment loan and most creditors have structured their businesses around this fact. As stated by the Fourth Circuit:

> This is a risk the creditor takes on any installment loan. Similarly, if a debtor in default surrenders the collateral during bankruptcy proceedings, the creditor must

I.O.P. 36.5 and 36.6.

**120**

sell it, and the discharge of the debtor will bar collection of any deficiency ... When a nondefaulting debtor is discharged while retaining the collateral, the principal disadvantage to the creditor is the possibility that the value of the collateral will be less than the balance due on the secured debt. But this is a risk in all installment loans, and presumably the creditor has structured repayment to accommodate it.

*In re Belanger,* 962 F.2d 345 (4th Cir.1992).

 In the within proceeding, Chrysler Credit argues that the cause of the automobile's rapid depreciation is high mileage. However, this Court notes that the deduction for this Vehicle's mileage, according to the N.A.D.A. guide, is only $875.00. Additionally, this deduction for mileage is notably in the lower to lower-middle range for high mileage, indicating that the mileage is not as unreasonable a figure as the creditor puts forward. Hence, it appears that the automobile has depreciated only $875.00 as a direct result of high mileage since its purchase. This amount of depreciation does not provide the creditor sufficient evidence to show that the debtors' use of the Vehicle was beyond the creditor's reasonable expectations such that the creditor should receive relief from the automatic stay based upon a lack of adequate protection. If the debtor does not default, the creditor receives the full benefit of the bargain despite bankruptcy. *In re Belanger, supra* at 349. It is the finding of this Court that Chrysler Credit is not entitled to relief from the stay based solely upon the rate of mileage incurred.

 In this case, the Vehicle appears to be insured. The Chapter 13 Plan of the Debtors proposes the repayment of Chrysler Credit's claim by making monthly payments of the allowed value of its secured claim plus eight and one-half percent (8.5%) interest (and through a dividend of seventeen percent (17%) of Chrysler Credit's unsecured claim). By determining the value of the Vehicle at the retail value as of the date of the valuation hearing, this Court has recognized Chrysler Credit's right to adequate protection from further depreciation at the point in time that Chrysler Credit requested such relief. Additionally, without pre-determining confirmation of the Debtors' proposed Plan, the Plan appears to properly treat Chrysler Credit and in as much as the confirmation hearings in this District are likely to quickly follow the determination of value, it appears that the proposed plan payments can and do for purposes of § 362 relief, adequately protect Chrysler Credit's interest in the Vehicle. In this case it appears that Chrysler Credit's interest in the Vehicle is adequately protected for purposes of the § 362 motion.

## NECESSARY TO AN EFFECTIVE REORGANIZATION

 Since the parties have stipulated that there is no equity in the Vehicle above Chrysler Credit's lien, the Court must next consider whether the Vehicle is necessary for an effective reorganization. Chrysler Credit has taken the position that the Debtors do not use the Vehicle for business purposes and therefore it is not necessary to an effective reorganization. The Debtors allege that the Vehicle is their sole vehicle for personal and family purposes and is necessary to their reorganization under Chapter 13. The Supreme Court provided the appropriate standard to make this determination in the 1988 *Timbers of Inwood Forest* opinion.

Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral in issue is "necessary to an effective reorganization." See § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means, as many lower courts ... have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time".

*United Savings Assoc. v. Timbers of Inwood Forest Associates, Ltd. (In re Timbers of Inwood Forest),* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740, 17 C.B.C.2d 1368 (1988).

Based upon the *Timbers* test propounded by the Supreme Court, the debtors must show that there is a reasonable possibility of an effective reorganization. Coates has filed

a Chapter 13 Plan which is currently awaiting confirmation. Coates anticipates the confirmation of the Plan and has shown this Court that, at this point, they have adequate disposable income to pay under the Plan and that, at this stage, it appears to conform to the requirements of § 1325. Additionally, it appears that the other vehicles which may be available to the Debtors are limited by their employers to business purposes and that this Vehicle is the sole vehicle for the personal use of the Debtors' family. Under the feasibility test adopted by this Court in measuring the requirements of § 362(d)(2)(B), it is the finding of this Court that the Vehicle is necessary to an effective reorganization.

### CONCLUSION

Based upon the foregoing, it is

**ORDERED,** that the Vehicle has a value of $15,925.00 as of January, 1995. Chrysler Credit is secured to the extent of $15,925.00 and unsecured for the balance of its claim. It is further

**ORDERED,** that Chrysler Credit Corporation's Motion for Relief from the 11 U.S.C. § 362 Automatic Stay is denied.

**AND IT IS SO ORDERED.**