Paul GARCIA, Debtor.

David Ross, Appellant,

v.

Paul Garcia, Appellee.

BAP Nos. 14–064, 14–071.
Bankruptcy No. 13–13829–WCH.

United States Bankruptcy Appellate Panel
for the First Circuit.

June 24, 2015.

Ellen B. Kaplan, Esq., and Kathryn E. Sullivan, Esq., on brief for Appellant.

Neil D. Warrenbrand, Esq., on brief for Appellee.

Before DEASY, FINKLE, and CARY, United States Bankruptcy Appellate Panel Judges.

CARY, Bankruptcy Judge.

This appeal is part of a 22 year-long effort by creditor David Ross to recover a multimillion dollar personal injury award against debtor, Paul Garcia. Ross' collection efforts have thus far been thwarted by the debtor's bankruptcy. This appeal addresses Ross' challenge of two orders of the bankruptcy court: (1) the order denying his motion to vacate the order permitting the debtor to amend Schedule A; and (2) the order allowing the debtor's amended motion to partially avoid Ross' lien (collectively "the Orders"). For the reasons discussed below, we **AFFIRM** the Orders.

### BACKGROUND

On June 25, 2013, the debtor filed a chapter 7 petition and the requisite schedules, and the following day a chapter 7 trustee was appointed. On his Schedule A–Real Property, the debtor listed residential property (the "Property"), which he valued at $745,000.00. He based this value on a comparative market analysis a local broker completed on June 8, 2013 (the "$745,000.00 Valuation"). On Schedule C–Property Claimed as Exempt, he claimed a $500,000.00 exemption in the Property pursuant to state law. On his Schedule D–Creditors Holding Secured Claims, the debtor reported that Ross held a $4,050,623.00 lien on the Property (the "Judicial Lien").

Two months later, the debtor filed a

motion pursuant to § 522(f)[1] (the "Lien Avoidance Motion"), seeking to partially avoid the Judicial Lien. In it, the debtor valued his interest in the Property at $696,778.00, a figure he derived by deducting a broker's commission, recording fee, and the cost of tax stamps from the $745,000.00 Valuation. He also stated that the Property was subject to a first mortgage in the amount of $71,101.00. According to the debtor, the Judicial Lien impaired the $500,000.00 homestead exemption to which he would have been entitled and therefore should be avoided to the extent of $3,924,946.00. Based on the formula set forth in § 522(f), the debtor asserted that the amount of the surviving lien should be $125,677.00.

Ross filed an opposition to the Lien Avoidance Motion, arguing that the debtor understated the value of the Property by inappropriately deducting hypothetical liquidation costs. Then, in connection with the trustee's efforts to market and sell the Property, the trustee and Ross, relying on the $745,000.00 Valuation, stipulated that there was equity to partially satisfy the Judicial Lien.

In February 2014, approximately eight months after the petition date, the trustee obtained a comparative market analysis of the Property of $625,000.00 to $660,000.00 from a realtor (the "$625,000–$660,000 Valuation"), based in part on the condition of the Property. The Property was then marketed for sale. In September 2014, nearly fifteen months after the petition date, the debtor procured a formal appraisal of the Property which valued it at $635,000.00 as of the petition date (the "$635,000.00 Appraisal"). Based on this reduction in value, the debtor filed the motions giving rise to this appeal, including his: (1) motion to amend the Lien Avoidance Motion (the "Motion to Amend"); (2) Motion to Amend Schedule A; and (3) his amended Lien Avoidance Motion (the "Amended Lien Avoidance Motion").

In the Motion to Amend, the debtor explained that when he filed the original Lien Avoidance Motion he had relied on the $745,000.00 Valuation used on the petition date because he could not afford the cost of a formal appraisal. He indicated further that he believed the $745,000.00 Valuation was based only on a "drive-by" viewing and, therefore, it failed to take into consideration structural damage to the Property. Urging the court to adopt the $635,000.00 Appraisal, the debtor argued that it took into account the Property's deferred maintenance, which remained unchanged since the petition date. Emphasizing that the trustee had not received even a "lowball" purchase offer for the Property and had filed a report of no distribution, the debtor asked the court to grant the Motion to Amend.

In his Motion to Amend Schedule A, the debtor sought to adjust the value of the Property to conform to the $635,000.00 Appraisal. Arguing that the Property was of no value to the estate, he maintained that the proposed amendment would not impair the interests of any party.

In the Amended Lien Avoidance Motion, the debtor recalculated the amount of impairment to reflect the reduced value of the Property as follows:

| Judicial Lien | $4,050,623.00 |
| First Mortgage | + $71,101.00 |

---

1. Unless otherwise indicated, the terms "Bankruptcy Code," "section" and " § " refer to Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended.

| | |
|---|---|
| Total Liens | $4,121,724.00 |
| Exemption | $+500,000.00 |
| Total | $4,621,724.00 |
| Less Property Value | -$635,000.00 |
| Amount of Impairment | $3,986,724.00 |

Without a hearing, the court entered separate orders granting the Motion to Amend (the "Order Amending Lien Avoidance Motion") and the Motion to Amend Schedule A (the "Order Amending Schedule A"). Twenty-two days later, Ross filed an opposition to the Amended Lien Avoidance Motion (the "Opposition"), accompanied by a June 2006 appraisal which valued the Property at $875,000.00 (the "$875,000.00 Appraisal"). He asserted that: the $745,000.00 Valuation most accurately reflected the Property's worth, the Property's alleged decline in value was the result of the debtor's own conduct, and permitting the debtor to avoid his lien based on the Property's reduced value would cause Ross undue prejudice. Accordingly, Ross asked the court to: (1) deny the Amended Lien Avoidance Motion; (2) schedule an evidentiary hearing; and (3) value the Property at $745,000.00.

He also simultaneously filed a motion to vacate the Order Amending Schedule A (the "Motion for Reconsideration") which the debtor opposed, in part on the ground that Ross lacked any support for his challenge to the $635,000.00 Appraisal. Although Ross acknowledged that Fed. R. Bankr. P. 1009(a) permits a debtor to amend a claim of exemptions at any time before the case is closed, he asserted two exceptions to that right: prejudice to creditors or the trustee, and bad faith. Ross argued that both exceptions applied.

In support of the "prejudice exception," Ross reiterated that he had relied on the debtor's initial representations concerning the Property's worth in refraining from pursuing other potential assets of the debtor. With respect to the bad faith exception, he argued that the $635,000.00 Appraisal, although performed in September 2014, purported to state a value of the Property as of the petition date. The debtor disagreed and the court scheduled both matters for a nonevidentiary hearing. The hearing notice provided: "If, in the course of the nonevidentiary hearing, the court determines the existence of a disputed and material issue of fact, the court will schedule an evidentiary hearing."

At the outset of the hearing, the court readily denied the Motion for Reconsideration, reasoning "[i]t doesn't matter what [the debtor] puts on his schedules." The court then shifted its attention to the Amended Lien Avoidance Motion.

After explaining that the debtor hired an appraiser only after the trustee failed to sell the Property, the debtor's counsel urged the court adopt the $635,000.00 Appraisal. Ross' counsel countered that the debtor's belated effort to reduce the value of the Property was prejudicial to Ross and that the debtor's purported failure to disclose known facts relating to the condition of the Property constituted bad faith. The court noted that the $875,000.00 Appraisal carried little weight due to its age and asked whether Ross had evidence to refute the debtor's contention that the Property's condition at the time of the $635,000.00 Appraisal and the $745,000.00 Valuation were the same. Ross' counsel answered in the negative, adding: "I would suggest that an evidentiary hearing is appropriate." After learning that Ross had no current appraisal, the court concluded:

THE COURT: So what have I got? I've got a $745,000 drive-by, then I've got a trustee's hired broker who comes in at 630 to 660, and then I've got debtor's new appraisal at 635. It[ ] strikes me that ... I've got at least *prima facie* evidence that 635 is a good number and I think that is how I will rule. You haven't moved fast enough, frankly, to let me put this offer in it and for you to go out and get an appraisal now and continue this on.

So where are we going? We've got a homestead of 500, a first of 71 ...?

...

THE COURT: So 571. 571 from 635

...

...

THE COURT: 64. $64,000. All right. The lien is avoided except for $64,000. That's the ruling....

...

MS. KAPLAN: ... I just want to point out on the record that ... the issue of the reduction in valuation did not come up from the debtor until ... 30 days ago....

....

THE COURT: Okay. But that was 30 days ago....

Following the hearing, the bankruptcy court entered two orders, one denied the Motion for Reconsideration (the "Order Denying Reconsideration") and the other granted, for the reasons set forth on the record, the Amended Lien Avoidance Motion (the "Lien Avoidance Order").

This appeal ensued.[2] Ross argues on appeal that the bankruptcy court failed to state a sufficient factual or legal basis for the Lien Avoidance Order to permit review. Additionally, he maintains that the bankruptcy court erred in: (1) granting the Motion to Amend Schedule A without a hearing; (2) declining to conduct an evidentiary hearing on the Motion for Reconsideration and the Amended Lien Avoidance Motion; and (3) ignoring the $745,000.00 Valuation.

### *JURISDICTION*

■ A bankruptcy appellate panel is "duty-bound" to determine its jurisdiction before proceeding to the merits, even if not raised by the litigants. *Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998) (quoting *Fleet Data Processing Corp v. Branch (In re Bank of New Eng. Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998) (internal quotations omitted)).

### I. Scope of Appeal

■ In addition to appealing the Lien Avoidance Order, Ross appealed the Order Denying Reconsideration. He did not appeal the underlying Order Amending Schedule A.

Ross did not at any time, either in the proceedings below or before this Panel, specify under which rule he had brought the Motion for Reconsideration. In order to determine the scope of the appeal we must first ascertain under which rule Ross sought reconsideration of the Order Amending Schedule A.

**2.** In an order dated November 24, 2014, the Panel directed Ross to file a separate notice of appeal for each order he intended to appeal, together with a separate filing fee, statement of issues, and designation of record. Ross timely complied. Thereafter, he filed a motion to consolidate the two appeals, arguing consolidation would serve the interests of judicial economy. The Panel granted Ross' consolidation request for briefing and argument only.

Depending on the time that the motion is served, a "motion to reconsider or vacate may be treated either as a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e) ("Rule 59(e)"), made applicable by Fed. R. Bankr. P. 9023, or as a motion for relief from judgment under Fed. R. Civ. P. 60(b) ("Rule 60(b)"), made applicable by Bankruptcy Rule 9024." *Rodriguez v. Banco Popular de P.R. (In re Rodriguez)*, 516 B.R. 177, 183–84 (1st Cir. BAP 2014). Because Ross did not file the Motion for Reconsideration within 14 days of the entry of the Order Amending Schedule A, we treat the motion as one brought under Rule 60(b).[3] *See* Fed. R. Bankr. P. 9023 (requiring motion to alter or amend a judgment to be filed "no later than 14 days after entry of judgment"); *see also In re Rodriguez*, 516 B.R. at 184 (citation omitted). Having identified the proper statutory framework for the Motion for Reconsideration, we must examine whether our review extends to the underlying Order Amending Schedule A.

An appeal from an order denying reconsideration is "generally not considered to be an appeal from the underlying judgment." *Batiz Chamorro v. Puerto Rican Cars, Inc.*, 304 F.3d 1, 3 (1st Cir.2002) (citation omitted). Notwithstanding this general rule, we are mindful that where, as here, the notice of appeal names only the post-judgment order, we occasionally have reviewed the post-judgment order and the judgment itself. Those cases, however, are distinguishable on two grounds.

First, we review both orders only "when it is clear that the appellant intended to appeal both orders, and where both parties brief issues relating to the underlying judgment." *Municipality of Carolina v. Baker González (In re Baker González)*,

490 B.R. 642, 646 (1st Cir. BAP 2013) (citations omitted); *see also Bellas Pavers, LLC v. Stewart (In re Stewart)*, No. MB 12–017, 2012 WL 5189048, at *4–5 (1st Cir. BAP Oct. 18, 2012) (citing cases); *Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval)*, 327 B.R. 493, 504 (1st Cir. BAP 2005). Here, Ross' brief is silent regarding the underlying order.

Second, cases which extend the scope of the appeal to encompass the underlying order involve appeals of Rule 59 motions, whose timely filing tolled the appeal period for the underlying orders by operation of Fed. R. Bankr. P. 8002(b)(1)(B) or (C). *In re Baker González*, 490 B.R. at 646 (citation omitted). "This result may not occur on an appeal from an order disposing of a Rule 60(b) motion unless that motion is filed within 14 days of the underlying judgment." *Haddock Rivera v. ASUME (In re Haddock Rivera)*, 486 B.R. 574, 577 n. 4 (1st Cir. BAP 2013); *see also* Fed. R. Bankr. P. 8002(b)(1)(D).

In the instant case, Ross did not file the Motion for Reconsideration until 22 days after the Order Amending Schedule A; therefore, the Motion for Reconsideration did not toll the appeal period for that order. Thus, even if Ross had included the Order Amending Schedule A in his notice of appeal, it would have been untimely. Accordingly, we will not review the Order Amending Schedule A, and our review will be limited to the Order Denying Reconsideration and the Lien Avoidance Order.

## II. Finality

A panel may hear appeals from: (1) final judgments, orders, and decrees; or (2) with leave of court, from interlocutory orders and decrees. *See* 28 U.S.C.

---

**3.** The court entered the Order Amending Schedule A on September 22, 2014. Ross filed the Motion for Reconsideration on October 14, 2014.

§ 158(a); *In re Bank of New Eng. Corp.,* 218 B.R. at 645. A decision is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945).

 "[A]n order denying relief from judgment under Rule 60(b) is generally considered a final appealable order." *Balzotti v. RAD Invs., LLC (In re Shepherds Hill Dev. Co.),* 316 B.R. 406, 413 (1st Cir. BAP 2004) (citation omitted). Similarly, a bankruptcy court order granting lien avoidance is a final order. *Tedeschi v. Falvo (In re Falvo),* 227 B.R. 662, 663 (6th Cir. BAP 1998) (quoting *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989)). Accordingly, we have jurisdiction over the Orders.

### STANDARD OF REVIEW

 We review a decision to grant or deny a motion for reconsideration under Rule 60(b) for manifest abuse of discretion. *Ruiz Rivera v. Pfizer Pharm., LLC,* 521 F.3d 76, 81 (1st Cir.2008) (citations omitted). "This is the case because the [trial] court has substantial discretion and broad authority to grant or deny such a motion." *Id.* (citation omitted). "An abuse of discretion occurs when the trial court ignores a material factor deserving significant weight, relies upon an improper factor, or assesses all proper and no improper factors, but makes a serious mistake in weighing them." *In re Stewart,* 2012 WL 5189048, at *5 (citation omitted).

 "The question of whether a judicial lien is avoidable under § 522(f) is a question of law we review de novo." *Albuquerque Chem. Co. v. Arneson Prods., Inc.,* No. 99–2336, 1999 WL 1079600, at *3 (10th Cir. Nov. 30, 1999) (citation omitted); *see also McCoy v. Kuiken (In re Kuiken),* 484 B.R. 766, 769 (9th Cir. BAP 2013). Valuation of an estate's asset is a question of fact reviewed for clear error. *Callaway v. Novelli (In re Bouchard),* A.P. No. 09–00223–8–RDD, 2011 WL 110901, at *3 (Bankr.E.D.N.C. Jan. 12, 2011) (citations omitted). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Goat Island S. Condo. Ass'n v. IDC Clambakes, Inc. (In re IDC Clambakes, Inc.),* 727 F.3d 58, 63–64 (1st Cir. 2013) (citation omitted) (internal quotations omitted).

### DISCUSSION

#### I. The Denial of Reconsideration

 Rule 60(b) lists six grounds for seeking relief from a judgment. *See* Fed. R. Civ. P. 60(b)(1)–(6).[4] As mentioned above, Ross did not specify the rule, let alone the subsection, pursuant to which he sought relief. It is clear, however, from the record that Ross is not asserting that relief be granted for any of the first five grounds for reconsideration set forth in Rule 60(b). That leaves us with subsection (b)(6): "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). This is the "catch-all" provision, "appropriate only when none of the first five sections per-

---

**4.** Rule 60(b) specifically provides relief from a judgment for the following reasons:
 (1) mistake, inadvertence, surprise, or excusable neglect;
 (2) newly discovered evidence ...;
 (3) fraud ...;

 (4) the judgment is void;
 (5) the judgment has been satisfied, released or discharged; ... or
 (6) any other reason that justifies relief.
Fed. R. Civ. P. 60(b).

tain." *Ahmed v. Rosenblatt,* 118 F.3d 886, 891 n. 9 (1st Cir.1997).

A movant pursuing a Rule 60(b)(6) claim "faces formidable hurdles." *Simon v. Navon,* 116 F.3d 1, 5 (1st Cir. 1997). "Rule 60(b)(6) motions should be granted only where exceptional circumstances justifying extraordinary relief exist.... [D]istrict courts have broad discretion to determine whether such circumstances exist. Additionally, a 60(b)(6) movant must make a suitable showing that the movant has a meritorious claim." *Ahmed v. Rosenblatt,* 118 F.3d at 891 (citations omitted).

### A. Extraordinary or Exceptional Circumstances

The Motion for Reconsideration is not couched in a statutory framework and does not invoke the standards for relief set forth in Rule 60(b). Consequently, Ross' arguments in the proceedings below and on appeal are devoid of any reference to the existence of exceptional circumstances justifying extraordinary relief. Instead, he predicated the Motion for Reconsideration on the two common law exceptions to a debtor's right to amend schedules (*see infra*), arguing that the amendment to Schedule A was prejudicial to his interests and was made in bad faith. Even if we accepted these arguments as true, case law does not support that either circumstance justifies extraordinary relief.

Having concluded that Ross failed to show exceptional circumstances justifying Rule 60(b)(6) relief, our review of the denial of the Motion for Reconsideration need go no further.

### B. The Bankruptcy Court's Discretion Regarding Evidentiary Hearings

Additionally, Ross insists the bankruptcy court erred in declining to hold an evidentiary hearing on the Motion for Reconsideration. We are unpersuaded. Although Fed. R. Bankr. P. 9014(a) provides for "reasonable notice and opportunity for hearing" in contested matters, this phrase means "after such notice and opportunity for a hearing as is appropriate in the particular circumstances." *In re Abijoe Realty Corp.,* 943 F.2d 121, 124 n. 4 (1st Cir.1991) (citing 11 U.S.C. § 102(1)(A))

"[T]he bankruptcy court has the discretion to decide an issue without holding an evidentiary hearing." *Rockstone Capital LLC v. Metal,* 508 B.R. 552, 558 (E.D.N.Y.2014) (citations omitted); *see also In re Int'l Fibercom, Inc.,* 503 F.3d 933, 939–40 (9th Cir.2007) (citations omitted); *Munce's Superior Petroleum Prods., Inc. v. N.H. Dep't of Envtl. Servs.,* 490 B.R. 5, 7 (D.N.H.2013). "[T]he question is not whether we would opt to convene a testimonial hearing in the circumstances, but whether the trial court abused its discretion in not doing so." *Zizza v. Pappalardo (In re Zizza),* 500 B.R. 288, 294 (1st Cir. BAP 2013) (citing *United States v. Grant,* 114 F.3d 323, 326 (1st Cir.1997)). A bankruptcy judge "does not abuse her discretion in reaching a decision without holding an evidentiary hearing where the record provided ample evidence on which the court could make such a decision." *Rockstone Capital LLC v. Metal,* 508 B.R. at 559 (citations omitted) (internal quotations omitted). In this case, the bankruptcy court's October 15, 2014 notice of hearing stating that the court would only schedule an evidentiary hearing in the event it determined there was a disputed and material issue of fact is consistent with this general rule.

Moreover, against the backdrop of Fed. R. Bankr. P. 1009's "permissive approach"

to amending schedules,[5] *see In re Newton,* 2002 WL 34694092, at *2 (1st Cir. BAP 2002), Ross' bare request for an evidentiary hearing on the Motion for Reconsideration, without more, did not entitle him to such a hearing. When the bankruptcy court proceeded with a nonevidentiary hearing on the Motion for Reconsideration as noticed, it did so based on a record which already included three valuations upon which the court could make a determination of value. Thus, the bankruptcy court did not abuse its discretion in declining to conduct an evidentiary hearing on the Motion for Reconsideration where the only supporting evidence supplied by Ross to dispute the debtor's reduced valuation as of the petition date was limited to a stale appraisal from 2006.

## II. Lien Avoidance Order

"Section 522(f) allows a debtor to avoid a lien attaching to the debtor's interest in property to the extent that the lien impairs an exemption the debtor is entitled to claim." *Snyder v. Rockland Trust Co. (In re Snyder),* 279 B.R. 1, 4 (1st Cir. BAP 2002).

The statute determines whether a lien impairs an exemption "by way of a simple equation." *In re Dore,* No. 99–10642–JMD, 1999 WL 33457771, at *2 (Bankr. D.N.H. Aug. 5, 1999); *see also Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur),* 482 B.R. 15, 34 (Bankr. D.Mass.2012) (stating "motion to avoid a judicial lien under § 522(f) requires only a simple arithmetic test that does not permit a court, in its discretion, to consider factors extraneous to § 522(f)") (citation omitted). Section 522(f)(2)(A) specifically provides:

For the purposes of this subsection, a lien shall be considered to impair an

exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A).

 "Thus, the extent to which a lien may be avoided may be easily computed once four variables are determined: (1) the amount of the lien in question; (2) the sum of all other liens on the property; (3) the amount of the debtor's exemption; and (4) the value of the subject property." *In re Dore,* 1999 WL 33457771, at *2. "A debtor who moves under § 522(f) to avoid a creditor's lien bears the burden of proof by a preponderance of the evidence on every statutory element." *In re Barksdale,* No. 08–63096, 2014 WL 3611838, at *3 (Bankr.N.D.N.Y. July 10, 2014) (citations omitted); *see also Premier Capital, Inc. v. DeCarolis (In re DeCarolis),* 259 B.R. 467, 471 (1st Cir. BAP 2001). The "petition date is the operative date for determining the various § 522(f) calculations." *Wilding v. CitiFinancial Consumer Fin. Servs. (In re Wilding),* 475 F.3d 428, 432 (1st Cir.2007).

 The single variable which the parties dispute in this case is the value of the Property. "In § 522, 'value' means fair market value as of the date of the filing of the petition…." *Id.* "The fair market value of an asset is 'the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.'" *In re Gag-*

---

5. *See* discussion of Fed. R. Bankr. P. 1009, *infra.*

**184**

*non*, No. 03–10934–JMD, 2005 WL 1331142, at *2 (Bankr.D.N.H. June 1, 2005) (quoting *United States v. Cartwright*, 411 U.S. 546, 551, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973)). The "best evidence of the fair market value of any property would be the actual sale price between a willing buyer and a willing seller." *Id.* In the absence of such evidence, the court "must rely on valuation methodologies other than actual sale to decide fair market value." *Id.* "However, by definition, all alternative methods of valuation are based on a subjective evaluation of the amount that *could* be obtained in an actual sale." *Id.* "Valuation outside the actual market place is inherently inexact." *Rushton v. Comm'r*, 498 F.2d 88, 95 (5th Cir.1974). It was precisely this sort of valuation that the court below was called upon to perform.

"The determination of the weight to be given to the opinion evidence of value [wa]s a matter within the discretion of the" bankruptcy court. *In re Vokac*, 273 B.R. 553, 557 (Bankr.N.D.Ill.2002) (citing *United Air Lines, Inc. v. Int'l Ass'n of Machinist & Aerospace Workers, AFL–CIO*, 243 F.3d 349, 360–61 (7th Cir.2001) (explaining substantial deference given to trial court's decision because of its proximity to the evidence)). Indeed, one court stated a "bankruptcy court is not bound to accept the values contained in the parties' appraisals; rather, it may form its own opinion of the value of the subject property after considering the appraisals and expert testimony." *In re Smith*, 267 B.R. 568, 572–73 (Bankr.S.D.Ohio 2001) (citations omitted).

■ Here, the bankruptcy court was confronted with four values for the Property: (1) the $745,000.00 Valuation (June 2013); (2) the $635,000.00 Appraisal (September 2014); (3) the $625,000.00–$660,000.00 Valuation (February 2014); and (4) the $875,000.00 Appraisal (June 2006). Having disregarded the $875,000.00 Appraisal as outdated, the bankruptcy court was left with the $745,000.00 Valuation (based on a drive-by appraisal), the $635,000.00 Appraisal (based upon an inspection of the Property), and the $625,000.00–$660,000.00 Valuation (based upon a realtor's market analysis conducted midway between the other two appraisals). The court found the $635,000.00 value of the property established by the licensed appraiser most probative of the actual value of the property on the petition date. *See In re Vokac*, 273 B.R. at 557. Although this appraisal postdates the petition date by fifteen months there is nothing in the record to refute the debtor's representation that the condition of the Property was essentially the same on the petition date as on the date of that appraisal. Additionally, the bankruptcy court's determination of value was well within the range set forth in the $625,000.00–$660,000.00 Valuation the trustee had obtained. Further, the court's decision was informed by the inability of the trustee to sell the Property and the lack of any offers for the Property. Accordingly, the bankruptcy court's conclusion that the value of the Property was $635,000.00 was not clearly erroneous.

Moreover, Ross' complaint that the bankruptcy court should have afforded him an evidentiary hearing on valuation is unavailing. First, Ross presented the argument without support in his brief, contending:

Federal Rule of Bankruptcy 9014 requires reasonable notice and an opportunity to be heard in all contested matters.... An objecting party should be afforded the opportunity to investigate new claims, especially where it is only the objecting party's interest that is being prejudiced....

Under such circumstances, the First Circuit instructs that an argument is waived. *See, e.g., United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990) (explaining failure to brief an issue in more than perfunctory manner results in waiver). Second, the substance of the argument is without merit. As discussed, *supra,* the bankruptcy court may exercise its discretion in determining whether or not to conduct an evidentiary hearing. Here, the bankruptcy court had the benefit of an ample record upon which to make a determination of value, even in the absence of an evidentiary hearing.

Equally unavailing is Ross' argument that the Panel must remand this matter due to the bankruptcy court's lack of specific factual findings and conclusions of law. Appellate courts consistently hold that "cursory findings and conclusions or even the complete lack of findings and conclusions does not necessarily require [reversal] if a full understanding of the issues on appeal can nevertheless be determined...." *Adobe Trucking, Inc. v. PNC Bank (In re Adobe Trucking, Inc.),* 551 Fed.Appx. 167, 174 (5th Cir.2014) (citations omitted) (internal quotations omitted); *see also Landmark Land Co. v. Office of Thrift Supervision,* 990 F.2d 807, 811 (5th Cir.1993) (holding appellate court can review a district court record in the absence of findings "as long as [ ] the record is exceptionally clear"); *Voelkel v. Naylor (In re Voelkel),* 322 B.R. 138, 144 (9th Cir. BAP 2005) (citation omitted) (stating lack of findings is "immaterial if we can obtain a complete understanding of the issues from the record as a whole"). In the memorandum of proceeding memorializing the Order Granting Amended Lien Avoidance Motion, the bankruptcy court incorporated by reference its findings and conclusions articulated from the bench. The transcript of the hearing on the Amended Lien Avoidance Motion does not leave us confused or uncertain as to the basis for the bankruptcy court's decision. Accordingly, the purported absence of findings and conclusions of law does not constitute grounds for reversal or remand.

Based upon the foregoing, the bankruptcy court did not err when it entered the Lien Avoidance Order.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the Orders.