FILED
U.S. Bankruptcy Appellate
Panel of the Tenth Circuit

**April 8, 2024**

**Anne M. Zoltani**
Clerk

NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

IN RE AMBER KAY SHANK,

    Debtor.

_____

INSTANT ONE MEDIA, INC.,

    Appellant,

v.

AMBER KAY SHANK,

    Appellee.

BAP No. KS-23-016

Bankr. No. 21-20605
Chapter 13

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Kansas

_____

Before **JACOBVITZ**, **HALL**, and **LOYD**, Bankruptcy Judges.

_____

**HALL**, Bankruptcy Judge.

_____

"It ain't necessarily so."[2] That is the lesson learned by the judgment creditor in the case before us. A debtor owned and operated a business selling vinyl peel-and-stick film

---

[1] This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

[2] George Gershwin, *Porgy and Bess* (Lawrence Tibbett 1935).

1

applied to countertops and appliances to achieve faux finishes. A competitor sued the debtor and her company in federal court in Georgia asserting breach of contract and trademark infringement. Shortly before the case went to trial, the debtor filed bankruptcy under chapter 13, and the competitor decided to proceed solely against her company and obtained a judgment in the Georgia case. The competitor, however, failed to timely file a proof of claim in the debtor's bankruptcy case. Instead, it objected to her chapter 13 plan on, among other things, bad faith grounds citing a multitude of inaccuracies and falsehoods in her petition. It also urged the Bankruptcy Court to give collateral estoppel effect to documents in the Georgia case's docket. Following an evidentiary hearing, the Bankruptcy Court rejected the collateral estoppel argument, concluded the debtor filed her petition and plan in good faith, and confirmed her chapter 13 plan. The message to the creditor? Simply calling statements false does not mandate a finding of bad faith. Finding no error in the Bankruptcy Court's ruling, we affirm.

## I.    Background

Amber Kay Shank ("Shank") owns and operates EZFauxDecor, LLC ("EZFauxDecor"), a company that sells decorative peel-and-stick vinyl film for kitchen countertops and appliances.[3] Shank formed EZFauxDecor in 2012 and is the sole member

---

[3] *Complaint* at 8, *in* Appellant's App. at 106.

2

of the company.[4] Instant One Media, Inc. ("Instant One" or "Appellant") sells the same type of vinyl adhesive products to resurface countertops and appliances.[5]

On February 1, 2019, Appellant filed a complaint against Shank and EZFauxDecor in the United States District Court for the Northern District of Georgia asserting breach of contract and trademark infringement claims (the "Georgia Litigation").[6] A trial was scheduled to begin in the Georgia Litigation on June 2, 2021.[7] On May 28, 2021, Shank filed her individual chapter 13 petition.[8] Rather than seeking relief from the automatic stay, Appellant opted to proceed with the Georgia Litigation against EZFauxDecor only.[9] The jury returned a unanimous verdict in favor of Appellant on June 4, 2021, finding the following: "$275,000 of actual damages for either breach of contract or trademark infringement; $500,000 in disgorgement on the trademark claim; and $260,000 in attorneys' fees" (the "Georgia Verdict").[10] The District Court entered a judgment awarding damages in those amounts.[11] EZFauxDecor appealed to the Eleventh Circuit, which affirmed the disgorgement and attorneys' fees award and reversed and

---

[4] Debtor Amber Shank's Brief on Issues of (1) Instant One Media, Inc.'s Claim that Debtor's Bankruptcy was Filed in Bad Faith, and (2) Instant One Media, Inc.'s Objection to Amended Plan, in Appellant's App. at 1081.

[5] *See Order Overruling Objection to Confirmation* at 2-3, *in* Appellant's App. at 1662-63.

[6] *Complaint*, *in* Appellant's App. at 99.

[7] *Civil Jury Calendar*, *in* Appellant's App. at 1821.

[8] Chapter 13 Voluntary Petition for Individuals Filing for Bankruptcy, *in* Appellant's App. at 22.

[9] *Civil Jury Calendar*, *in* Appellant's App. at 1824.

[10] *Jury Verdict*, *in* Appellant's App. at 117.

[11] *See Amended Judgment*, *in* Appellant's App. at 121.

remanded in part with respect to the actual damages award (the "Eleventh Circuit Opinion").[12]

In the bankruptcy case, Shank filed her schedules and Statement of Financial Affairs ("SOFA") identifying Appellant as a creditor with a contingent, unliquidated, and disputed claim against her.[13] The Bankruptcy Court set the claims bar date for August 6, 2021, but Appellant never filed a proof of claim.[14]

Shank filed her proposed chapter 13 plan on June 30, 2021.[15] On July 21, 2021, Appellant filed an objection to the plan contending, inter alia, Shank undervalued her business assets which resulted in a lower dividend to unsecured creditors.[16] Shank responded that Appellant did not have standing to object because it had not filed a proof of claim.[17] On September 13, 2021, Shank filed an *Amended Chapter 13 Plan* (the "Plan"), which provided for 100% payment of all allowed unsecured claims.[18] Appellant objected to the Plan on October 4, 2021, this time adding bad faith grounds to its previous

---

[12] *Opinion* at 9, *in* Appellant's App. at 1687.

[13] Schedule E/F: Creditors Who Have Unsecured Claims, *in* Appellee's Supp. App. at 1878.

[14] Appellant filed a *Motion to Allow Late Filed Claim* on August 16, 2021. Appellee's Supp. App. at 1916. The Bankruptcy Court noted Appellant was seeking to avoid the results of missing the deadline to file a formal proof of claim and denied the motion because Appellant's objection to Shank's proposed plan "cannot serve [as] an informal proof of claim and the missed deadline cannot be extended for excusable neglect under Bankruptcy Rule 9006." *Order Denying Creditor's Motion to Allow Late-Filed Proof of Claim* at 7, *in* Appellee's Supp. App. at 2103. Appellant did not appeal this order.

[15] *Chapter 13 Plan*, *in* Appellee's Supp. App. at 1907.

[16] *See Debtor's Response in Opposition to Creditor Instant One Media, Inc.'s Objection to Confirmation* at 1, *in* Appellant's App. at 45.

[17] Id.

[18] *Chapter 13 Plan*, *in* Appellant's App. at 56.

objections.[19] Specifically, Appellant argued Shank used "this bankruptcy and the automatic stay as a shield to siphon money from [EZFauxDecor, LLC] to Debtor to frustrate [Instant One's] rights to collect on its Judgment."[20] On June 15, 2022, the Bankruptcy Court entered its *Order Partially Overruling Objection to Confirmation* in which it acknowledged Appellant is a "party of interest" under 11 U.S.C. § 1324[21] with standing to object to confirmation on bad faith grounds only.[22]

Following a two-day evidentiary hearing on plan confirmation beginning on December 8, 2022, the Bankruptcy Court reserved ruling and allowed the parties to submit post-trial briefs regarding the issue of bad faith.[23] On June 8, 2023, the Bankruptcy Court entered its *Order Overruling Objection to Confirmation* (the "Order") finding the petition and plan were filed in good faith.[24] Appellant appealed the Order on

---

[19] *Creditor Instant One Media, Inc.'s Objection to Confirmation*, *in* Appellee's Supp. App. at 1943.

[20] *Id*. at 1947-48.

[21] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

[22] *Order Partially Overruling Objection to Confirmation*, *in* Appellant's App. at 228.

[23] Both parties filed supplemental briefs on the bad faith issue. *See Creditor Instant One Media, Inc.'s Post-Hearing Supplemental Brief*, *in* Appellant's App. at 1630; *Debtor Amber Shank's Post-Trial Brief*, *in* Appellant's App. at 1646.

[24] We note the Order includes a recitation of testimony and evidence but contains no explicit findings of fact. Nevertheless, we construe the Bankruptcy Court's recitation of testimony to be factual findings as both parties do likewise. Moreover, the recitation of testimony is clearly the basis for the Bankruptcy Court's ultimate conclusion Shank did not act in bad faith.

June 20, 2023.[25] Three days later, the Bankruptcy Court entered its *Order Confirming Modified Plan* (the "Confirmation Order").[26]

## II.    Jurisdiction

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless a party elects to have the district court hear the appeal.[27] Instant One filed a timely notice of appeal after entry of the Order, which merged with the Confirmation Order and is now final and reviewable on appeal.[28] No party elected to have the district court hear the appeal.

---

[25] Notice of Appeal and Statement of Election, *in* Appellant's App. at 1723.

[26] *Order Confirming Modified Plan*, *in* Appellee's Supp. App. at 2114.

[27] 28 U.S.C. §§ 158(a)(1), (b)(1), and (c)(1).

[28] The order overruling the objection to confirmation from which the appeal was taken was interlocutory when it was entered. The Confirmation Order making it a final order was entered shortly after the appeal was filed. It appears to us the order overruling the objection became final during the pendency of this appeal so Appellant was not required to file a new notice of appeal or seek leave to file an interlocutory appeal. *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1209 n.5 (10th Cir. 2013) (ripening into finality occurs so long as the prematurely appealed order bears "some indicia of finality and is likely to remain unchanged during subsequent court proceedings.") (quoting *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1111 (10th Cir. 2007)); *In re Hatcher*, 208 B.R. 959, 966 (10th Cir. BAP 1997), *aff'd sub nom. Wade v. Hatcher*, 133 F.3d 932 (10th Cir. 1998) (citing *Lewis v. B.F. Goodrich Co.,* 850 F.2d 641 (10th Cir.1988) (en banc) (observing a premature notice of appeal filed from a non-final judgment may ripen upon the entry of a subsequent final judgment, provided the appellate court has not yet dismissed the appeal for lack of jurisdiction)). *See also Koch v. City of Del City*, 660 F.3d 1228, 1237 (10th Cir. 2011) ("[O]nce a [trial] court enters a final order, its earlier interlocutory orders merge into the final judgment and are reviewable on appeal.") (quoting *Long v. St. Paul Fire & Marine Ins. Co.*, 589 F.3d 1075, 1078 n.2 (10th Cir. 2009)); *In re Novinda Corp.*, 585 B.R. 145, 151 (10th Cir. BAP 2018) ("An order overruling objections to confirmation and confirming a Chapter 11 plan is a final order for purposes of 28 U.S.C. § 158(a).") (citing *In re Interwest Bus. Equip. Inc.*, 23 F.3d 311, 315 (10th Cir. 1994)). But if necessary for us to exercise jurisdiction over this appeal, pursuant to Fed. R. Bankr. P. 8003(d), we treat the notice of appeal of the order

6

Accordingly, this Court has jurisdiction over this appeal.[29]

### III.     Issue on Appeal and Standard of Review

There is one issue on appeal.[30] This Court must determine whether the Bankruptcy Court erred in finding Shank filed her petition and proposed the Plan in good faith. We review a bankruptcy court's determination that a chapter 13 petition has been filed in good faith for clear error.[31] Likewise, we review a bankruptcy court's determination that a chapter 13 plan has been proposed in good faith for clear error.[32] "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the

_____

overruling the objection as a motion for leave to file an interlocutory appeal and we grant it.

[29] Shank does not challenge Appellant's standing in this appeal. Here, although Appellant failed to timely file a proof of claim, it has unliquidated and disputed claims against Shank that were stayed by, and are subject to discharge in, Shank's chapter 13 bankruptcy. We note Appellant has interests directly and adversely affected by the Order and, thus, standing to appeal. *See In re Pettine*, 655 B.R. 196, 205 (10th Cir. BAP 2023) (limiting appellate review to "persons aggrieved" by the order on appeal, *i.e.*, a person's rights or interests must be directly and adversely affected pecuniarily by the order).

[30] Appellant presents the following as the issues on appeal:

I. Whether the lower court erred in finding that Shank filed her Chapter 13 Petition in good faith.
II. Whether the lower court erred in finding that Shank's Chapter 13 Plan was proposed in good faith.
III. Whether the lower court erred in overruling Creditor-Appellant Instant One Media, Inc.'s ("IOM") Objection to Confirmation.

Appellant's Opening Br. 10. Appellant incorporates the issue of whether the Bankruptcy Court failed to consider the Eleventh Circuit Opinion in its good faith determination as part of its argument. For the reasons discussed in this opinion, we conclude Appellant forfeited that argument on appeal.

[31] *In re Gier*, 986 F.2d 1326, 1328 (10th Cir. 1993) (reviewing lower court's conclusion that the debtor filed his petition in bad faith for clear error).

[32] *In re Alexander*, 363 B.R. 917, 924 (10th Cir. BAP 2007) (citing *In re Robinson*, 987 F.2d 665, 668 (10th Cir. 1993)).

entire evidence is left with the definite and firm conviction a mistake has been committed."[33] Moreover, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[34] "[T]he reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."[35]

## IV.    Discussion

*A.    The Bankruptcy Court did not fail to conduct a proper scope of inquiry as to the issue of whether Shank filed her petition and proposed the Plan in good faith.*

Section "1307(c) permits a bankruptcy court to dismiss a chapter 13 petition 'for cause,' and 'lack of good faith is sufficient cause for dismissal.'"[36] Section 1325(a) provides a court shall confirm a plan if, among other things, "the plan has been proposed in good faith and not by any means forbidden by law" and "the action of the debtor in filing the petition was in good faith."[37] A chapter 13 debtor bears the burden of proving good faith.[38]

In analyzing whether a debtor filed a petition or proposed a plan in good faith, bankruptcy courts must consider the totality of the circumstances and determine "whether or not under the circumstances of the case there has been an abuse of the provisions,

---

[33] *Id.* (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[34] *Wagner v. Wagner (In re Wagner)*, 527 B.R. 416, 429 (10th Cir. BAP 2015) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).

[35] Fed. R. Civ. P. 52(a)(6).

[36] *In re Gier*, 986 F.2d at 1329 (citing *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992)).

[37] 11 U.S.C. § 1325(a)(3) and (a)(7).

[38] *In re Davis*, 239 B.R. 573, 577 (10th Cir. BAP 1999).

purpose, or spirit of [the Chapter]."[39] To guide bankruptcy courts in doing so, the Tenth

Circuit has adopted a non-exhaustive list of factors relevant to a determination of whether

a chapter 13 plan has been filed in good faith.[40] A "finding that a proposed chapter 13

plan is lacking in good faith should be reserved for cases in which debtors exhibit serious

misconduct or abuse or unfair manipulation of the [Bankruptcy] Code."[41] Similarly, the

Tenth Circuit has adopted an additional non-exhaustive list of factors relevant to a

bankruptcy court's determination as to whether a petition has been filed in good faith,

---

[39] *In re Gier*, 986 F.2d at 1329 (determining a totality of the circumstances approach assists bankruptcy courts in making good faith determinations under § 1307(c) and § 1325(a)(3)); *Flygare v. Boulden (In re Flygare)*, 709 F.2d 1344, 1347 (10th Cir. 1983) (quoting *In re Estus*, 695 F.2d 311, 316 (8th Cir. 1982)). The totality of the circumstances approach is used to determine what constitutes bad faith under both § 1307(c) and § 1325(a)(7). *See, e.g.*, *In re Lewis*, No. 23-12555 TBM, 2024 WL 845947, at *15 (Bankr. D. Colo. Feb. 28, 2024) (unpublished) (using the totality of the circumstances analysis relevant to a § 1307(c) bad faith filing inquiry to determine whether debtor filed her petition in good faith under § 1327(a)(7)).

[40] *In re Flygare*, 709 F.2d at 1347-48. The non-exhaustive list of factors to determine with a chapter 13 plan was filed in good faith, later applied in *In re Gier*, is as follows: "(1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee." *Id.* (quoting *In re Estus*, 695 F.2d at 317).

[41] *In re Richall*, 470 B.R. 245, 250 (Bankr. D. N.H. 2012).

and the lack of good faith is sufficient cause for dismissal under chapter 13.[42] The weight

given to individual factors will vary with the circumstances of each case.[43]

Here, the Bankruptcy Court examined several of the relevant factors under the

totality of the circumstances before determining Shank filed her chapter 13 petition and

plan in good faith. Specifically, the Bankruptcy Court determined Shank filed her petition

because she could not pay her debts, not because she was trying to avoid them. The

Bankruptcy Court highlighted the business-related facts surrounding Shank's bankruptcy

filing unrelated to the Georgia Litigation: the beginning of the pandemic, resulting global

supply chain issues, and escalating shipping costs. The Bankruptcy Court noted Shank

faced personal challenges as well, including a significant tax bill and a newly discovered

heart condition. Additionally, it found noteworthy she was the primary caregiver for her

elderly mother who had dementia and lived with Shank full-time. The Bankruptcy Court

also observed (i) Shank's plan paid all unsecured creditors in full; (ii)  Shank had been

forthcoming based on what she believed to be true at the time she filed her petition; and

(iii) her timing in filing the petition on the eve of trial in the Georgia Litigation did not

---

[42] *In re Gier*, 986 F.2d at 1329. The non-exhaustive list of factors to determine with a chapter petition was filed in good faith is as follows: (i) the nature of the debt (including whether that debt would be dischargeable under chapter 7); (ii) the timing of the petition; (iii) how the debt arose; (iv) the debtor's motive for filing the petition; (v) how the debtor's actions affect the creditors; (vi) the debtor's treatment of the creditors both before and after the petition was filed; and (vii) whether the debtor has been forthcoming with the bankruptcy court and creditors. Additionally, rejection or confirmation of a chapter 13 plan is also a factor for the bankruptcy court to consider in determining whether a petition should be dismissed for bad faith. *Id.* (quoting *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992)).

[43] *In re Young*, 237 F.3d 1168, 1175 (10th Cir. 2001) (quoting *Flygare*, 709 F.2d at 1348).

reflect an intent to avoid paying her debts, but instead was motivated by her inability to pay them.

The Bankruptcy Court evaluated whether Shank's failure to update her schedules was indicative of bad faith and concluded the evidence did not support such a finding. The Bankruptcy Court rejected Appellant's other bad faith arguments and observed they crossed the line between zealous advocacy and misrepresentations and were without merit.  The Bankruptcy Court also considered the timing of Shank's bankruptcy filing and applied Tenth Circuit precedent to conclude filing bankruptcy on the eve of another trial does not in itself suggest bad faith.

Appellant relies on *In re Nittler*[44] to assert the Bankruptcy Court failed to conduct "a proper scope of inquiry"[45] in determining whether Shank filed her petition and plan in good faith by failing to examine the totality of the circumstances. Additionally, Appellant argues the Bankruptcy Court's failure to inquire into Shank's reckless indifference to the truth—particularly as applied to her failure to amend her schedules and SOFA to correct any inaccuracies—shows it did not consider the totality of the circumstances.

Shank asserts Appellant fails to meet its burden to show the Bankruptcy Court's findings were clearly erroneous. She contends she filed her petition and plan in good faith and argues the Bankruptcy Court evaluated the credibility of the witnesses—primarily Shank—at the two-day evidentiary hearing. Finally, she notes the Bankruptcy Court properly based its ruling on the full record before it and found no evidence of fraud.

---

[44] 67 B.R. 217 (D. Kan. 1986).
[45] Appellant's Opening Br. 33.

Contrary to Appellant's assertion, the Bankruptcy Court undoubtedly considered the totality of the circumstances in ruling Shank filed her petition and proposed the Plan in good faith. It is abundantly clear Shank's credibility played a large role in the Bankruptcy Court's good faith determination. But the Bankruptcy Court also considered many of the other relevant factors. It explicitly considered the timing of the petition, how Shank's debt arose, her motive for filing the petition, her treatment of the creditors both before and after the petition was filed, and whether she was forthcoming with the Bankruptcy Court and creditors.[46] It also considered the existence of special circumstances, such as obstacles EZFauxDecor faced because of the pandemic, and Shank's health issues and personal challenges attributable to her caregiving responsibilities. Additionally, the Bankruptcy Court found Shank filed her petition because she could not pay her debts, not because she was trying to avoid them. This finding goes to the motivation and sincerity of the debtor in seeking chapter 13 relief.

In *Nittler*, the court emphasized a broad scope of inquiry concerning the debtor's pre- and post-filing conduct was appropriate in determining whether the plan was proposed in good faith.[47] The bankruptcy court was admonished to apply the *Flygare* factors because the record indicated "additional facts that the [bankruptcy] court should have found and considered had it placed sufficient emphasis on the [debtor's] pre-filing conduct in determining the presence of bad faith."[48] We do not make such a

---

[46] The Bankruptcy Court also found Shank's documentary evidence bolstered the explanations she gave about her accounting practices.

[47] 67 B.R. at 220-21.

[48] *Id.* at 221.

determination here because the Order reflects the Bankruptcy Court's substantial consideration of Shank's pre-filing conduct, including market conditions impacting her business, family-related issues affecting her expenses, and business practices accepted by her accountant.

We also reject Appellant's argument the Bankruptcy Court was required to conduct an inquiry into whether Shank acted with a reckless indifference to the truth. Appellant characterizes Shank's incorrect or inaccurate statements as fraudulent and asserts the Bankruptcy Court was required to conduct a reckless indifference inquiry. The *Flygare* and *Gier* factors do not specifically mention reckless indifference to the truth. The Bankruptcy Court considered whether and to what extent Shank made inaccurate statements and disclosures and, based on the evidence, found that any inaccurate statements or disclosures were made in good faith.

The law is clear a good faith determination is to be made on a case-by-case basis considering the totality of the circumstances. Ultimately, the Bankruptcy Court must determine whether "after weighing all the facts and circumstances, the plan is determined to constitute an abuse of the provisions, purpose or spirit of Chapter 13."[49] It is readily apparent here the Bankruptcy Court conducted the proper scope of inquiry to do so. While it did not expressly address each of the relevant factors (nor did it need to),[50] the

---

[49] *In re Flygare*, 709 F.2d 1344, 1347 (10th Cir. 1983) (quoting *In re Estus*, 695 F.2d 311, 315-16 (8th Cir. 1982)).

[50] The Bankruptcy Court is not required to go through a rote analysis of each of the relevant factors. These factors are intended to be a guide for courts making the good faith determination and are not exhaustive. *See id.* at 1348. *See also, e.g., In re Gemelli*,

Bankruptcy Court clearly considered the totality of the circumstances in making its ruling that Shank filed her chapter 13 case and plan in good faith. We determine there is sufficient evidence in the record to support this finding and, having reviewed the record, we are not left with a definite and firm conviction that an error has occurred.

### B. The Bankruptcy Court did not clearly err in finding Shank's alleged inaccuracies and falsehoods did not demonstrate bad faith.

Whether a debtor has been forthcoming with the bankruptcy court and the creditors is properly considered in determining a lack of good faith.[51] "[T]o the extent reasonably possible, a debtor seeking the protection of [a bankruptcy court] must file bankruptcy schedules which are both thorough and accurate."[52] However, it is well-settled "in the absence of evidence showing that the omission of assets or other inaccuracies in a debtor's schedules was more than an honest error or good-faith mistake, such omissions or other inaccuracies do not demonstrate bad faith."[53]

Here, the Bankruptcy Court found Shank provided the information in her schedules in good faith. The Bankruptcy Court reasoned any statements Appellant

---

No. 01486, 2011 WL 2292203, at *5 (D. Colo. 2011) ("The fact that the Bankruptcy Court failed to explicitly consider a number of the *Flygare* factors . . . does not show that it erred in finding that the Plan was not proposed in good faith.").

[51] *See In re Geir*, 986 F.2d 1326, 1329 (10th Cir. 1993) (quoting *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992)).

[52] *In re Gonyer*, 383 B.R. 316, 322 (Bankr. N.D. Ohio 2007) (citing *In re Bayless*, 78 B.R. 506, 509 (Bankr. S.D. Ohio 1987)).

[53] *In re Rickabaugh*, No. 1:20-BK-3505-HWV, 2021 WL 3520193, *7 (Bankr. M.D. Pa. Aug. 10, 2021) (unpublished) ("[T]he existence of an inaccuracy in a debtor's schedules will not, standing alone, warrant any adverse action so long as the inaccuracy is inadvertent. . . . .The reality is that mistakes do occur.") (quoting *In re Gonyer*, 383 B.R. at 322) (internal citations omitted).

alleged as "false" either had a good-faith explanation for the inaccuracy, were accurate according to the information Shank and her counsel had at the time they were made, did not necessarily have a right answer, or were actually true. The Bankruptcy Court further determined Shank's failure to correct her petition and schedules did not demonstrate bad faith because the Plan paid 100% of allowed claims. Simply put, the Bankruptcy Court found Shank's testimony at trial to be credible, and any discrepancies in her petition, schedules, and SOFA did not unveil an intent to mislead or engage in fraudulent conduct.

Appellant argues the Bankruptcy Court erred in finding that certain admittedly untrue statements were "actually true," absurd explanations were reasonable, and Shank's failure to correct inaccuracies were "no longer relevant."[54] Specifically, Appellant's arguments include Shank falsely (i) stated on question no. 4 of her SOFA that she had not used any other business name or EIN;[55] (ii) answered "no" to questions regarding payments to insiders within one year of filing for bankruptcy;[56] (iii) stated and testified that she paid no creditors in the ninety days prior to filing; and (iv) stated the value of her

---

[54] Appellant's Opening Br. 32-36. Notwithstanding Appellant's assertion, the Bankruptcy Court does not make a blanket statement that Shank's failure to correct any inaccuracies was no longer relevant. Rather, it states correcting her petition and schedules *now* "would not affect the terms of Shank's chapter 13 plan, which already pays 100% of allowed unsecured claims." Order at 11, *in* Appellant's App. at 1671 (emphasis added). The Bankruptcy Court uses Appellant's contention Shank overvalued her interest in EZFauxDecor to illustrate the point: "[B]ecause Shank's plan will pay all allowed unsecured claims in full, the value of that interest *per se* is no longer relevant to confirmation." *Id.*

[55] Appellant highlights that Instant One presented evidence below of a 2021 Form 1099-K filed by Amazon identifying Shank as the Payee but showing EZFauxDecor's EIN.

[56] SOFA, *in* Appellant's App. at 40.

business. Appellant asserts the Bankruptcy Court's findings that these statements were either "actually true" or, while inaccurate, had a "good-faith explanation for the inaccuracy" were clearly erroneous.[57] Appellant further argues the Bankruptcy Court erred in finding her valuation reasonable. Finally, Appellant argues it was error for the Bankruptcy Court to find Shank's omission of approximately fifty domain names occurred in good faith because it failed to conduct a totality of circumstances analysis to support such finding.

The record reflects Shank testified she believed EZFauxDecor was its own LLC and had its own EIN—she, personally, was not "doing business as" EZFauxDecor.[58] She further testified she had nothing to do with what appeared on forms prepared by third parties that included EZFauxDecor's EIN and Shank's name as the vendor, when in fact EZFauxDecor was the vendor—she merely provided the third parties with whatever information they requested. Further, the record reflects Shank fully disclosed her 100% ownership interest in the business and its EIN in her schedules and SOFA.[59]

---

[57] Order at 10, in Appellant's App. 1670 ("And some of the so-called 'false statements' are actually true. (E.g., Shank's statements she did not use EZFauxDecor's EIN and did not make a payment on a debt she owed to an insider during the year before she filed for bankruptcy.")).

[58] She testified her SOFA was accurate because "[t]he EIN was not in my name personally and that's how I read it." Dec. 9, 2022 Hr'g Tr. at 205:11-12, in Appellant's App. at 1343.

[59] It is not unusual for the line between an individual debtor and his or her LLC to become blurred. See, e.g., In re Hall, No. 22-40967, 2023 WL 2746104 (Bankr. W.D. Wash. March 31, 2023) (discussing the intricacies involved in calculating current monthly income for a self-employed chapter 13 debtor).

The record also reflects Shank testified she believed she answered questions accurately about prepetition payments to insiders and creditors. She testified that she believed the payments to her son from a commingled bank account in her name only were payments from EZFauxDecor's money in the account to compensate him for his full-time work for the LLC; the Form 1099s issued to him from the business provided additional evidence considered by the Bankruptcy Court.[60] She also testified, although she made payments to Capital One from the commingled bank account in the ninety days prior to filing, she used the Capital One credit card primarily for EZFauxDecor's business expenses,[61] and she considered the money deposited into the bank account that paid Capital One to be EZFauxDecor's money—not her personal funds.[62]  With respect to the scheduled value of her interest in EZFauxDecor, Shank testified she considered hard

[60] Order at 7 n.31, *in* Appellant's App. at 1677 (" 'The SOFA refers to debts. And while I suppose there's technically a debt if someone's paid weekly or biweekly, unless they're paid in advance, typically this pertains to antecedent debts, trade debts, payments on notes, commercial notes, personal notes, whatever.' Trial Tr. 223:22-224:1, Dec. 9, 2022. (Moreover, even if the wages at issue were a 'debt' for purposes of the question, they were owed by EZFauxDecor, not Shank.")).

[61] Dec. 9 Hr'g Tr. 82:1-84:22, *in* Appellant's App. at 1212-1214. Although Shank admitted she used the card for personal expenses as well, she stated it was easy for her to separate those out from the business charges because Capital One would provide her with a detailed year-end summary. *Id.* We acknowledge the record contains evidence of Shank's comingling of funds. While such commingling is not a sound business practice in our view, such practice in itself does not suggest error in the Bankruptcy Court's finding Shank's explanation was reasonable.

[62] *Id.* 152:1-154:12, *in* Appellant's App. at 1282-1284. We acknowledge a debtor's duty to provide accurate and thorough information in the petition, statements, and schedules continues throughout the duration of the case. *In re Gonyer*, 383 B.R. 316, 322 (Bankr. N.D. Ohio 2007) (citing *In re Bayless*, 78 B.R. 506, 509 (Bankr. S.D. Ohio 1987)). Here, however, Shank's failure to update her information during her bankruptcy proceeding has less bearing on the issue of whether she filed her petition or plan in good faith because the plan pays 100% of allowed unsecured claims. *See supra* note 54.

17

assets instead of cash and accounts receivable to value EZFauxDecor, further explaining

EZFauxDecor's worth was derived from the work she did so she valued her business

from the perspective of a prospective purchaser.

In each of these instances, the Bankruptcy Court found Shank's testimony

credible. Its factual findings that certain statements were either "actually true" or, while

inaccurate, had a "good-faith explanation for the inaccuracy" are plausible considering

the record viewed in its entirety. Further, the Bankruptcy Court's finding regarding the

reasonableness of Shank's value of EZFauxDecor also was not clearly erroneous. The

valuation of assets is not an exact science and is done on a case-by-case basis.[63] In the

case of a small business, the value is often attributable to the talents and energies of the

owner or manager.[64]

Finally, we find no error in the Bankruptcy Court's finding of good faith despite

Shank's omission of the domain names. We agree Shank was required to disclose the

domain names.[65] But the Bankruptcy Court considered Shank's apparent belief the

---

[63] *See In re Garcia*, 532 B.R. 173, 184 (1st Cir. BAP 2015) ("Valuation outside the actual market place is inherently inexact.") (quoting *Rushton v. Comm'r*, 498 F.2d 88, 95 (5th Cir. 1974)); *In re Coates*, 180 B.R. 110, 112 (Bankr. D.S.C. 1995) (noting the critical role of the bankruptcy court's opinion in assessing the credibility of the valuation evidence). Indeed, if Shank wanted to defraud anyone regarding EZFauxDecor and its value, she would not have scheduled it at all. *See also Crane v. Morris (In re Morris)*, 302 B.R. 728, 740 (Bankr. N.D. Okla. 2003).

[64] *In re BMW Group I, Ltd.*, 168 B.R. 731, 738 (Bankr. W.D. Okla. 1994) ("The market value of a small business is also depressed by the difficulty of retaining value in the business after the sale" because "[t]he talents and energies of the current owner/manager may contribute significantly to the value of the business . . . .").

[65] The Bankruptcy Court did note that Shank should have included the domain names on her Schedule A/B. *See, e.g.*, *In re Paige*, No. 2:09MC869DAK, 2009 WL

domains were worthless because they were not being used to be reasonable and, thus, determined she omitted or overlooked them in good faith.

Our role as the reviewing court is not to assess whether we would have made the findings the trial court did but whether, on the entire evidence, we are left with the definite and firm conviction a mistake has been committed. We cannot reverse even if we are convinced we would have found differently.

In summary, the Bankruptcy Court was convinced Shank filed her chapter 13 petition and chapter 13 plan in good faith, in large part, based on her testimony that the Court found to be credible. It considered the circumstances leading up to Shank's bankruptcy filing and her explanations for completing her petition in the manner she did. We give due regard to the Bankruptcy Court's acceptance of Shank's testimony as "completely credible" and thus, upon review of the totality of the circumstances in this record, we simply cannot say the Bankruptcy Court's findings were clearly erroneous.

C. *The Eleventh Circuit Opinion was not before the Bankruptcy Court at the time it entered the Order, and therefore, any argument contending the Bankruptcy Court erred by failing to consider it is forfeited.*

Appellant argues "the lower court ignored the binding Opinion from the Eleventh Circuit Court of Appeal, which had issued and had been entered three months before the entry of the lower court's Final Order."[66] It asserts further, "[f]or purposes of collateral

---

3418156 at *4 (D. Utah Oct. 16, 2009) (upholding bankruptcy court's finding that a domain name was a valuable asset of estate).

[66] Appellant's Opening Br. 38-39.

estoppel, the lower court was required to accept the holding from the 11th Cir., namely that the jury determination was based on evidence of bad faith."[67]

As a threshold matter, Appellant cites no authority for its position with respect to a bankruptcy court's *duty* to take judicial notice. To the contrary, that decision is left to the court's discretion.[68] Moreover, it is the duty of one who relies on prior judicial proceeding records to call the court's attention to them.[69]

Here, the first and only time Appellant brought the Eleventh Circuit Opinion to the Bankruptcy Court's attention was via a *Motion for the Court to Take Judicial Notice* of the Eleventh Circuit Opinion filed *after* the issue of Shank's bad faith had been litigated

---

[67] *Id*. at 39.

[68] *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1224 (10th Cir. 2007) (reviewing district court's decision not to take judicial notice for abuse of discretion); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (courts have "discretion to take judicial notice of publicly-filed records in [their own] court and certain other courts concerning matters that bear directly upon the disposition of the case at hand") (overruling risk on other grounds); *St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (observing the discretionary nature of a court's decision to take judicial notice). Because Appellant did not appeal the Bankruptcy Court's order denying the motion to take judicial notice, that issue is not before this Court.

[69] *Ginsberg v. Thomas*, 170 F.2d 1, 3 (10th Cir. 1948).

and decided.[70] Generally, issues not presented in the lower court are forfeited on appeal.[71]

Because Appellant failed to raise this to the Bankruptcy Court, Appellant's argument that

the Bankruptcy Court erred by failing to consider the Eleventh Circuit Opinion is

forfeited on appeal.[72]

## V.     Conclusion

Accordingly, for the reasons stated above, we AFFIRM the Bankruptcy Court in

all respects.

---

[70] Bankr. ECF No. 148. The timeline is noteworthy. The Eleventh Circuit Opinion was issued on March 9, 2023. The Order was entered on June 8, 2023. The judicial notice motion was filed on June 20, 2023, the same day Appellant filed this appeal. The Bankruptcy Court denied the latter on June 21, 2023. Appellant had multiple opportunities to make the Bankruptcy Court aware of the Eleventh Circuit Opinion. Appellant could have 1) requested the Bankruptcy Court to take judicial notice of the Eleventh Circuit Opinion during the three-month period between the entry of the Eleventh Circuit Opinion and the entry of the Order, 2) filed a motion for reconsideration of the Order, and/or 3) filed a motion for reconsideration of the denial of its motion to take judicial notice. Appellant did none of these.

[71] *See United States v. Sides*, No. 20-1296, 2021 WL 2935259, *3 n.3 (10th Cir. July 13, 2021) (unpublished) (citing *United States v. Jarvis*, 499 F.3d 1196, 1201 (10th Cir. 2007)); *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1278 (10th Cir.1994). ("[A]ppellate courts will not entertain issues raised for the first time on appeal in an appellant's reply [brief].").

[72] *See Sides*, 2021 WL 2935259, *3 n.3 (citing *Jarvis*, 499 F.3d at1201 (10th Cir. 2007)).

21